**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John K. SNOOK, Defendant–Appellant.**

**No. 94–4004.**

United States Court of Appeals,
Seventh Circuit.

Argued May 8, 1995.

Decided July 26, 1995.

Robert Anderson, Asst. U.S. Atty., Madison, WI, for U.S.

Bruce J. Rosen, Gerald W. Mowris (argued), Pellino, Rosen, Mowris & Kirkhuff, Madison, WI, for John K. Snook.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

John Snook is a casualty of drug abuse. Consider his own words: "I realize what I've done is wrong. I wish I would have seeked out help at an earlier time in my life. For whatever reason, I did not. But I'd like to apologize to my family. I'm sorry that they had to be here to see this and I hope, with some help, I can make a better person of myself." So do we. Not only did Snook's drug abuse harm him, it caused him to harm others by dealing drugs to finance his own habit. The crux of this appeal is whether his sentence should reflect that his own personal use of drugs created an additional (if not primary) incentive to distribute drugs to others.

 Snook pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846. He appeals only the district court's determination as to the amount of drugs used to set his base offense level under United States Sentencing Guidelines § 2D1.1. Snook claims that the amount of drugs that he purchased from his supplier, Ernest Strothman, purportedly for personal use, should not be used in calculating his sentence. As this appeal concerns the district court's interpretation of the Sentencing Guidelines, we review the district court's decision *de novo*. *United States v. Hardy*, 52 F.3d 147, 150 (7th Cir.1995).

At the sentencing hearing, the district court accepted the Presentence Report's conclusion that, during the eighteen month conspiracy, Snook purchased 36 ounces of cocaine from Strothman.[1] Snook argues that the amount of cocaine that he personally used (approximately ½ of the total, in Snook's estimation) should not have been used in

calculating his offense level. Snook claimed that because he never intended to distribute this portion of the cocaine—but rather intended to and did in fact put it up his own nose—it wasn't part of the conspiracy to distribute. The government asserted, and the district court agreed, that this argument had already been rejected in *Precin v. United States*, 23 F.3d 1215 (7th Cir.1994). In *Precin*, the defendant had pleaded guilty to conspiracy to possess cocaine with the intent to distribute. On appeal, we stated that the amount of cocaine that his supplier gave Precin as a commission for making sales was correctly used in calculating Precin's sentence. We noted, "Any cocaine which Precin received for his personal use was necessarily intertwined with the success of the distribution." *Id.* at 1219. At Snook's sentencing hearing, the district court concluded, "The incentive for the conspiracy was [Snook's] own need. That was what kept him going. That was what caused him to buy as much as he did.... The good part of why he was buying [the cocaine] from Mr. Strothman [was] because he could buy in quantities to make money to continue to finance his own habit."

Snook argues that *Precin* is not controlling and that we should look to the Ninth Circuit's holdings in *United States v. Kipp*, 10 F.3d 1463 (9th Cir.1993), and *United States v. Rodriguez–Sanchez*, 23 F.3d 1488 (9th Cir. 1994). In *Kipp*, the Ninth Circuit held that, under the Guidelines, drugs obtained for personal use could not be used to determine a defendant's base offense level for the crime of possession with intent to distribute. *Id.* at 1466. *Rodriguez–Sanchez* extended the *Kipp* holding to sentencing in accordance with a statutory minimum, as opposed to sentencing under the Guidelines.

*Kipp* and *Rodriguez–Sanchez* are inapposite, however, and *Precin* controls our decision. In *Kipp* and *Rodriguez–Sanchez*, the defendants were charged with the offense of possession with the intent to distribute. Guidelines § 1B1.3(a)(2) instructs courts to use all drugs "that were part of the same

---

1. The defendant objected to the PSR's finding of 36 ounces, claiming that the actual amount was 30–34 ounces. However, the defendant does not pursue this objection on appeal, presumably because it would make no difference in the Guidelines calculation.

course of conduct or common scheme or plan as the offense of conviction" to calculate a sentence. In *Kipp* and *Rodriguez–Sanchez,* the "offense of conviction" was possession with intent to distribute, and the court decided that only the amount of drugs that the defendants intended to distribute was "part of the same course of conduct or common scheme or plan." While this may be true, it does not address our situation. Snook pleaded guilty to *conspiracy* to possess with intent to distribute. Therefore, if the drugs that he claims were for personal use "were part of the same course of conduct or common scheme or plan as the offense of conviction,"—conspiracy to possess with intent to distribute and to distribute cocaine—it was proper for the district court to consider that amount in calculating his base offense level.

In *Precin,* we held that drugs that the defendant obtained for his personal use from his supplier were "part of the same ... common scheme or plan," the plan being the conspiracy to distribute. By entering the plea agreement, Snook admitted that he and Strothman had a common scheme or plan. Snook attempts to distinguish his case from *Precin* by claiming that *Precin* viewed the "personal-use" cocaine as a commission, a form of payment that "was necessarily intertwined with the success of the distribution." *Precin* at 1219. He argues, on the other hand, that he "obtained some of the cocaine in a buyer-seller relationship for his personal use and some as a co-conspirator for distribution purposes. These amounts are severable." Snook's attempt to distinguish his situation from *Precin* is futile. All of the cocaine came from Strothman. It was not divided into packages for distribution and packages for personal use. For all Strothman knew, Snook was going to sell it all. More importantly, the amount that Snook personally consumed directly affected the conspiracy—the more Snook used, the more he had to sell to bank-roll his habit. That Strothman did not control exactly how much cocaine Snook had for personal use, as *Precin*'s supplier apparently did, does not break the link between the personal-use cocaine and the conspiracy. The personal-use cocaine still influenced the size and scope of the conspiracy.

We agree with the Ninth Circuit that the Guidelines are designed "to punish distributors more harshly than consumers of drugs and to make sentence[s] proportional to the amount of harm to society...." *Rodriguez–Sanchez,* 23 F.3d at 1496. But when the personal-use drugs act as the incentive to continue the conspiracy, they harm society over and above the harm they cause by their use. They encourage further distribution. The defendant's sentence is AFFIRMED.