UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5886

MARGARET VIOLET JENKINS WILLIAMS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5900

KENNETH HATALA,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-95-2)

Submitted: February 27, 1997

Decided: March 19, 1997

Before MURNAGHAN, NIEMEYER, AND MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

R. Mike Mullens, Elkins, West Virginia; Hunt L. Charach, Federal
Public Defender, C. Cooper Fulton, Assistant Federal Public

Defender, Charleston, West Virginia, for Appellants. William D. Wilmoth, United States Attorney, Paul T. Camilletti, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Margaret Jenkins Williams and Kenneth Hatala entered guilty pleas to Count One of a ten-count indictment charging them with conspiracy to possess with intent to distribute and to distribute dilaudid (hydromorphone), 21 U.S.C. § 846 (1994), and related offenses. They appeal their sentences. We affirm.

Between 1989 and 1994, Margaret Williams sought treatment for leukemia from at least nine doctors, claiming that she had discontinued chemotherapy for the disease and wanted simply to be free from pain until she died. To many of the doctors, she provided altered copies of her medical records. She obtained prescriptions for 6985 dilaudid tablets in this way. Some of the dilaudids were used by Williams' son, Kenneth Hatala, and her daughter, Elizabeth Jenkins. The majority of them were sold by Hatala, Jenkins, Williams, and her husband, Emerson Herrod. They often accepted stolen property as payment, and Williams eventually rented a storage unit in which to keep the overflow of stolen items. Herrod transported Williams to various doctors and had the prescriptions filled for her. Four days before their joint trial was scheduled, the defendants entered guilty pleas.

I. <u>Drug Amount</u>

Williams and Hatala were sentenced separately; both contest the district court's determination of the amount of drugs for which they

2

were accountable. The court's decision is reviewed for clear error. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995).

Appellants challenge the district court's use of all 6985 dilaudid tablets to calculate their offense levels pursuant to USSG § 2D1.1.[1] Both argued unsuccessfully in the district court that the amount should be reduced by the number of dilaudids consumed by the conspirators because the government had not shown specific intent to distribute those tablets. The district court discounted Herrod's and Williams' assertions at Williams' sentencing that she took between two and four dilaudids a day during the conspiracy [2] because Williams showed no sign of dilaudid addiction while she was in custody and never tested positive for dilaudid use while she was on release. Moreover, Betty Atkins, a friend of Jenkins who lived in Williams' house for several years, testified that the only time Williams used dilaudid was just before she went to a doctor, so that the drug would be in her system if she were tested. While Hatala and Jenkins were known to be users of dilaudid, the court found that any amounts they consumed were properly included as relevant conduct.

The Ninth Circuit has held that drugs possessed for personal use are not part of the same course of conduct or common scheme as drugs possessed with intent to distribute, and thus are not relevant conduct for sentencing under USSG § 1B1.3(a)(2). See United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1494-96 (9th Cir. 1994); United States v. Kipp, 10 F.3d 1463, 1465-66 (9th Cir. 1993). However, other circuits have held to the contrary. See United States v. Antonietti, 86 F.3d 206, 209 (11th Cir. 1996) (purchases for personal use are relevant conduct in determining amount defendant knew were distributed by conspiracy); accord United States v. Fregoso , 60 F.3d 1314, 1328 (8th Cir. 1995); United States v. Snook, 60 F.3d 394, 395 (7th Cir. 1995); United States v. Wood, 57 F.3d 913, 920 (10th Cir. 1995). The weight of authority persuades us that the district court did not clearly

_____

[1] United States Sentencing Commission, Guidelines Manual (Nov. 1995).
[2] Four tablets a day during the course of the conspiracy would have amounted to more than the total amount which Williams was known to have obtained.

3

err in finding that the total number of dilaudid obtained with fraudulently obtained prescriptions was relevant conduct for each defendant.

Williams also argued that Kenneth Hatala's girlfriend, Donna Koval, used Williams' name to forge prescriptions without her knowledge, and that her relevant conduct should be reduced accordingly. However, Williams was held accountable for the number of dilaudid tablets for which she personally obtained prescriptions, as shown by the records of the doctors and the pharmacies which issued and filled the prescriptions. She was not held accountable for the additional 340 dilaudid tablets which Hatala and Koval obtained without Williams' knowledge; this number was added only to Hatala's relevant conduct. The court also reduced Hatala's relevant conduct by the number of tablets obtained during periods when he was incarcerated in Florida and in West Virginia. However, the court found that he was responsible for dilaudids obtained during a period when he was employed in Florida but returned to West Virginia regularly to sell tablets for his mother. In sum, we find that the district court's determination of the base offense level for each defendant was not clearly erroneous.

II. Acceptance of Responsibility

Williams contends that the district court clearly erred when it refused to award her an adjustment for acceptance of responsibility. USSG § 3E1.1. She argues that she earned the adjustment by negotiating a plea shortly after she received copies of statements made by witnesses the government expected to call at trial (the Jencks materials). She also asserts that she was prevented from cooperating earlier because the government would not consider a plea from one defendant unless all agreed to plead guilty.

Williams admitted lying to the doctors to obtain dilaudid but blamed her children and their friends for convincing her to pretend that she had cancer. Because information from many sources indicated that Williams was the driving force in the conspiracy, the district court found that she was attempting to downplay her involvement rather than making a truthful admission of her criminal conduct. We find that the district court did not clearly err in finding that she had not demonstrated acceptance of responsibility.

4

III. Leadership Role (Williams)

Williams testified at her sentencing that her children took advantage of her ability to get prescriptions for dilaudid. She disclaimed knowledge or responsibility for sale of the tablets, although she did acknowledge selling a few of them. She said she got no money from the sales and claimed that she took between one and four dilaudid a day. Based on Atkins' testimony, however, the district court found that Williams was the organizer and leader of a conspiracy which, including her customers, comprised more than five participants. USSG § 3B1.1(a). The court's conclusion is supported by information received during the investigation from Donna Koval and a number of people who purchased dilaudid from Williams or her family. The court did not clearly err in making the adjustment.

IV. Obstruction of Justice (Hatala)

Hatala encountered Ray Cate, a defendant in a related case, while both were incarcerated, and told Cate that he would kill anyone who testified against him and would kill the witness's family if he could not get to the witness. Cate was not included on the government's witness lists prior to Hatala's plea. Hatala argued that the threat did not warrant an adjustment for obstruction of justice because Cate was neither a co-defendant, a witness, or a juror in his case. See USSG § 3C1.1, comment. (n.3(a)) (listing examples of obstructive conduct). The district court found that Hatala viewed Cate as a potential witness and made the threat to prevent him from testifying. We agree that the threat was an attempt to obstruct justice and such conduct merits an increase under the guideline. The district court did not clearly err in making the adjustment.

Accordingly, we affirm the sentences imposed on Williams and Hatala. We interpret Williams' motion for appointment of counsel as a request for new counsel. Her motion is denied. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5