**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5887

EMERSON HERROD, a/k/a Fritz,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-95-2)

Submitted: June 17, 1997

Decided: September 4, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gregory A. Elam, Elkins, West Virginia, for Appellant. William D.
Wilmoth, United States Attorney, Paul T. Camilletti, Assistant United
States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Emerson Herrod entered a guilty plea to conspiracy to possess with intent to distribute and to distribute dilaudid (hydromorphone), 21 U.S.C. § 846 (1994), and related offenses. Herrod contends on appeal that the district court's denial of his motion to withdraw his guilty plea was an abuse of discretion. He also appeals his 135-month sentence, alleging that the court clearly erred in determining the amount of dilaudid for which he was responsible, USSG § 2D1.1,[1] and in finding that he had not accepted responsibility, USSG § 3E1.1. We affirm.

Between 1989 and 1994, Herrod's wife, Margaret Williams, sought treatment for leukemia from at least nine doctors, claiming that she had discontinued chemotherapy for the disease and wanted only to be free from pain until she died. To many of the doctors, she provided altered copies of her medical records. She obtained prescriptions for 6985 dilaudid tablets in this way. Some of the dilaudids were used by Williams' son, Kenneth Hatala, and her daughter, Elizabeth Jenkins. The majority of them were sold by Hatala, Jenkins, Williams, and Herrod. They often accepted stolen property as payment, and Williams eventually rented a storage unit in which to keep the overflow of stolen items. Herrod transported Williams to various doctors and had the prescriptions filled for her. Four days before trial was scheduled, Herrod, Williams, and Hatala pled guilty to conspiracy. The district court deferred acceptance of Herrod's plea agreement until sentencing.

I. <u>Motion to Withdraw Guilty Plea</u>

Three months after he entered his guilty plea and the day before he was sentenced, Herrod moved to withdraw his plea. At the sentencing hearing, his attorney explained that Herrod had simply changed his mind and would rather go to trial. The district court denied the motion. We review the district court's decision for abuse of discre-

_____

[1] United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1995).

tion. See United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995). Even when acceptance of a defendant's plea agreement has been deferred, he must present a "fair and just reason" under Fed. R. Crim. P. 32(e), that is, one which brings into question the validity of his plea, if he wishes to withdraw his plea. See United States v. Hyde, -- U.S. --, 1997 WL 273691 (U.S. May 27, 1997) (No. 96-667). The factors to be considered in determining whether to permit a defendant to withdraw a guilty plea are set out in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Applying the test set out in Moore, we find that Herrod did not offer a fair and just reason for withdrawal of his plea. There was a three-month delay between the entry of the plea and his request to withdraw it. He had the assistance of competent counsel. He did not assert his innocence or assert that his plea had been involuntary or unknowing. The government would have been prejudiced by having to prepare for trial again. We therefore find that the district court did not abuse its discretion in denying Herrod's motion.

II. Drug Amount

Herrod next challenges the district court's use of all 6985 dilaudid tablets to calculate his offense level pursuant to USSG § 2D1.1. We review the district court's determination of the amount of drugs for which Herrod was accountable under the clearly erroneous standard. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995). He argued unsuccessfully in the district court that the amount should be reduced by the number of dilaudids consumed by the conspirators because the government had not shown specific intent to distribute those tablets. The district court discounted Herrod's assertions that Williams took between two and four dilaudids a day during the conspiracy[2] because Williams showed no sign of dilaudid addiction while she was in custody and never tested positive for dilaudid use while she was on release. While Hatala and Jenkins were known to be users of dilaudid, the court found that any amounts they consumed were properly included as relevant conduct. Prescriptions forged by

_____

[2] Four tablets a day during the course of the conspiracy would have amounted to more than the total amount which Williams was known to have obtained.

3

Hatala and his girlfriend without the knowledge of Herrod or Williams were excluded.

The Ninth Circuit has held that drugs possessed for personal use are not part of the same course of conduct or common scheme as drugs possessed with intent to distribute, and thus are not relevant conduct for sentencing under USSG § 1B1.3(a)(2). See United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1494-96 (9th Cir. 1994); United States v. Kipp, 10 F.3d 1463, 1465-66 (9th Cir. 1993). However, other circuits have held to the contrary. See United States v. Antonietti, 86 F.3d 206, 209 (11th Cir. 1996) (purchases for personal use are relevant conduct in determining amount defendant knew were distributed by conspiracy); accord United States v. Fregoso , 60 F.3d 1314, 1328 (8th Cir. 1995); United States v. Snook, 60 F.3d 394, 395 (7th Cir. 1995); United States v. Wood, 57 F.3d 913, 920 (10th Cir. 1995). The weight of authority persuades us that the district court did not clearly err in finding that the total number of dilaudid tablets obtained with fraudulently obtained prescriptions was relevant conduct for Herrod.

III. Acceptance of Responsibility

Herrod contends that the district court clearly erred when it refused to award him an adjustment for acceptance of responsibility. USSG § 3E1.1. He argues that he earned the adjustment by negotiating a plea shortly after he received copies of statements made by witnesses the government expected to call at trial. He also asserts that he was prevented from cooperating earlier because the government would not consider a plea from one defendant unless all agreed to plead guilty.

At Herrod's sentencing hearing, the government attorney asserted that only Jenkins approached him to explore the possibility of a plea before the eve of trial, thereby deflating the argument that Herrod was prevented from cooperating. The court did not find credible Herrod's written statement in which he claimed that Williams had taken two to four dilaudid tablets a day, a position which he maintained throughout at sentencing. The denial of relevant conduct which the court determines to be true may be a basis for denying an acceptance of responsibility adjustment. USSG § 3E1.1. We find that the district court did not clearly err in finding that Herrod had not demonstrated acceptance of responsibility.

4

Accordingly, we affirm Herrod's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5