**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 29 2000**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.                                     No. 99-8005

ANDREA ASCH,

      Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 98-CR-3-13-D)**

---

Maynard D. Grant, Grant & Newcomb, Seattle, Washington, for the appellant.

David A. Kubichek, Assistant United States Attorney (David D. Freudenthal, United States Attorney with him on the brief), District of Wyoming, Casper, Wyoming, for the appellee.

---

Before **LUCERO**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

---

      This case requires us to address, as a matter of first impression, whether a sentencing court, when determining the applicable        sentencing range for an

individual convicted of conspiracy to distribute and possess with intent to distribute controlled substances, can, under the United States Sentencing Guidelines and 21 U.S.C. § 841(b), include in its quantity calculations drugs possessed for personal consumption. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we hold that drugs possessed for personal consumption cannot be considered when determining the statutory sentencing range pursuant to 21 U.S.C. § 841(b), but such drugs can be considered when determining the sentencing range under the more expansive Sentencing Guidelines. We further hold that appellant Andrea Asch's guilty plea was knowing and voluntary. Accordingly, we remand for resentencing consistent with this opinion.

## I

An eleven-count indictment, naming fifteen people, charged Asch with one count of conspiring to distribute and conspiring to possess with intent to distribute methamphetamine from approximately June 1, 1996, to approximately February 4, 1998, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Asch initially pleaded not guilty. Pending trial, she completed a drug treatment program and began speaking in school drug prevention programs.

The day before her trial was scheduled to begin, Asch changed her plea to guilty. It was a "cold" plea—there was no plea agreement with the government.

At the change-of-plea hearing, the district court expressed considerable concern that Asch did not fully appreciate the very real possibility that she would be sentenced to a mandatory minimum term of ten years in prison if the government's allegations concerning the quantity of drugs were supported by the evidence at the sentencing hearing. The judge engaged in lengthy conversations with both defense counsel and Asch, the import of which was to ensure she understood the likely degree of punishment awaiting her. Ultimately, the district court accepted her guilty plea.

The sentencing hearing focused on evidence of the quantity of drugs that should be used to determine the appropriate sentencing range under the statute, 21 U.S.C. § 841(b), and the Sentencing Guidelines, U.S.S.G. § 2D1.1. The government's primary witness was Wes Counts, a co-conspirator who testified pursuant to a plea agreement. In a proffer made at the time of that plea agreement, Counts stated that he delivered approximately two ounces of methamphetamine to Asch every week from May 1997 to January 1998. At the sentencing hearing, Counts's story changed to some degree. He testified he delivered methamphetamine to Asch weekly from May 1997 to approximately November or December 1998;    he made no deliveries during a period of at least four weeks; his deliveries were irregular; and his deliveries were never more frequent than weekly. During the time he was supplying Asch, he testified his

deliveries generally were between one and two ounces, though on one occasion he delivered eight ounces and on one or two occasions he delivered four ounces. All of these amounts were rough estimates.

Asch also offered two different versions of these transactions. At the time of her arrest, she told police she had received between two and four ounces of methamphetamine per month from Counts beginning in May 1997 and continuing until January 1998. At sentencing, Asch recanted that story, alleging her prior statements were made under duress. Instead, she testified that she began her dealings with Counts in June 1997, at which time she obtained one-eighth-ounce quantities, most of which she and her husband consumed themselves. After a few weeks, she began receiving one-fourth-ounce deliveries approximately twice a month, half of which she and her husband consumed themselves and half of which she sold. She further testified that the largest quantity she ever received from Counts was two ounces, on three occasions, of which she consumed half and sold half. Asch ceased receiving drugs from Counts in mid-November. Towards the end of that period, she was using methamphetamine multiple times a day.

The final fact witness at the sentencing hearing was Regina Smith, another co-conspirator who also testified pursuant to a plea agreement. Smith testified that in August or September 1996, she began purchasing one-fourth to one-half grams of methamphetamine from Asch and eventually was purchasing one-eighth-

ounce quantities four or five times a week. On one or two occasions she purchased one-fourth of an ounce from Asch. Smith stopped purchasing from Asch some time between March 27, 1997, and June 1997. The government also introduced ledgers seized from Asch's home that purportedly demonstrate she was dealing multiple-ounce quantities from late 1996 through October 1997.

The district court characterized Asch's testimony at the sentencing hearing as "very troubling." (X R. at 46.) It relied instead on her earlier statement to police. Assuming that Asch dealt with Counts over a period of eight months, the court found this statement supported an estimate of a minimum of 453.6 grams and a maximum of 907.2 grams, which corresponded with Counts's minimum estimate of 963.9 grams. [1] The court concluded "[j]ust looking at Counts' testimony, it stretches credulity to believe that it was under 1,000 grams." (X R. at 45.) Based on this quantity, the district court sentenced Asch to the statutory minimum penalty of 120 months imprisonment, see 21 U.S.C.

---

[1] One ounce is equivalent to approximately 28.35 grams.

§ 841(b)(1)(A)(viii), [2] a term which also fell within the applicable range set forth in the Sentencing Guidelines.

On appeal, Asch claims the district court erred by accepting her guilty plea because it was not knowing and voluntary. She also contends the district court erred when calculating the quantity of drugs for sentencing purposes because the calculation was not supported by the facts, the court failed to compensate for drugs consumed by the defendant, and the court included quantities not involved in the offense of conviction.

## II

A district court has a duty to ensure that a defendant's guilty plea is truly voluntary. See Fed. R. Crim. P. 11(d); United States v. Gigot, 147 F.3d 1193, 1197 (10th Cir. 1998). "[W]hether the defendant's plea was knowing, intelligent, and voluntary is a question of law we review de novo." Gigot, 147 F.3d at 1197 (citing United States v. Browning, 61 F.3d 752, 753 (10th Cir. 1995); United

---

[2] At the time of Asch's offense, 21 U.S.C. § 841(b)(1)(A)(viii) mandated a sentence of at least 10 years for a violation of § 841(a) involving one kilogram or more of a substance containing methamphetamine. Congress subsequently amended this section to reduce the threshold quantity to 500 grams. See Methamphetamine Trafficking Penalty Enhancement Act of 1998, Pub. L. No. 105-277, § 2(a), 112 Stat. 2681 (1998). The provision in effect at the time of the offenses applies in this case. See Miller v. Florida, 482 U.S. 423, 430-33 (1987) (holding that the Ex Post Facto Clause bars the application of more onerous state sentencing guidelines to criminal conduct that occurred prior to the effective date of the change).

States v. Gomez-Cuevas, 917 F.2d 1521, 1524 (10th Cir. 1990)).  Asch alleges her

plea was not knowing, intelligent, and voluntary because she did not appreciate

the full extent of the punishment she was facing.  Specifically, she argues her

counsel advised her that a substantial downward departure from the prescribed

sentencing range was possible, and her perspective was tainted by her personal

transformation since being arrested.      [3]

The record belies this argument.  As Asch herself notes, the district court

was "admirably cautious in its adherence to Rule 11's requirements . . . ."

(Appellant's Br. at 24.)  The sentencing judge was deeply concerned that Asch

was in a state of denial regarding her predicament and for that reason took

substantial steps to rectify any misconceptions.  He had a lengthy discussion with

defense counsel to ascertain whether counsel had appropriately advised Asch of

the risk of incarceration, emphasizing that from his perspective a mandatory

minimum of ten years was "probably more a fact" than a "worse case scenario."

(VII R. at 6.)  He then had a lengthy discussion with Asch, during which he told

her that in "all likelihood . . . you'll be going to serve a term of incarceration,"

(VII R. at 39), carefully discussed the potential applicable sentencing ranges as

---

[3] Asch does not raise an ineffective assistance of counsel claim, but has preserved that issue for purposes of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255.  See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal.").

set forth in the Guidelines, emphasized the possible application of a statutory mandatory minimum, and even went so far as to tell her he seldom departs downward from the applicable Guidelines range. Far from being erroneous, the district court's efforts to ensure that Asch's plea was knowing, intelligent, and voluntary were exemplary.

## III

Asch argues the district court committed three errors when calculating the drug quantity for purposes of determining the appropriate sentencing range pursuant to the Sentencing Guidelines and 21 U.S.C. § 841(b): (1) its findings lack factual support; (2) it failed to adjust its calculations for quantities of drugs she herself had consumed; and (3) it improperly included in its calculations quantities of drugs collateral to the offense of conviction. A district court's findings as to drug quantity are reviewed for clear error. See United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995). However, we review de novo a district court's interpretation and application of a statute or the Guidelines. See United States v. Myers, 106 F.3d 936, 941 (10th Cir. 1997).

## A

The district court's findings as to quantity are not clearly erroneous. The court determined that Asch's statement to the police when she was arrested was more credible than her testimony at the sentencing hearing and that her earlier

statement was corroborated by Counts's testimony at the hearing. This court is loath to second-guess a district court's determination of a witness's credibility, see Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) (holding that a trial court's decision to credit testimony of one individual over another is "virtually never" clear error), and we see no reason to do so here. The government demonstrated that Asch committed perjury during an earlier court appearance, and the district court found that more instructive than the defense's claim that Asch was under duress when she made her initial statement to the police. Her initial statement, Counts's testimony, and the drug ledgers are more than sufficient evidence to support the district court's conclusion that Asch received from Counts an average of two ounces (57.7 grams) of methamphetamine every two weeks for eight months and on occasion received larger quantities. The quantity of methamphetamine in these transactions totals at least 1000 grams.

**B**

Simply by virtue of the fact that Asch handled at least 1000 grams of methamphetamine, however, the sentencing court was not necessarily permitted to include that entire quantity in its calculation of her sentence. Rather, a sentencing court can only include in its calculations those drugs possessing the proper relation to the offense of conviction. Asch argues that quantities of methamphetamine she consumed did not possess the proper relation as required by

either the Guidelines, U.S.S.G. §§ 1B1.3 and 2D1.1, or the statute, 21

U.S.C. § 841(b).

Our analyses of this question in the context of the Sentencing Guidelines

and 21 U.S.C. § 841(b) are distinct. The Guidelines permit a court to consider all

"relevant conduct" when determining the base offense level for someone

convicted of an offense involving drugs. See U.S.S.G. §§ 1B1.3, 2D1.1. As we

recently made clear in United States v. Santos, 195 F.3d 549, 551 (10th Cir.

1999), however, "Guideline constructs such as relevant conduct . . . are limited to

their designed role in Guideline-range calculations and do not affect the

independent determination of the statutory sentencing directives." Under a plain

reading of § 841(b), "the statutory directives are exclusively a function of the

quantities involved in the offense of conviction." Id. at 552.

1.    Relevant Conduct Under the Guidelines

Under the Guidelines, whether conduct is relevant to the defendant's role in

a conspiracy is determined by reference to "all acts and omissions committed,

aided, abetted, counseled, commanded, induced, procured, or willfully caused by

the defendant; and . . . all reasonably foreseeable acts and omissions of others in

furtherance of the jointly undertaken criminal activity." U.S.S.G.

§§ 1B1.3(a)(1)(A), 1B1.3(a)(1)(B). The commentary to U.S.S.G. § 1B1.3

elaborates: A person convicted of conspiracy to distribute controlled substances

- 10 -

"is accountable for all quantities of contraband with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3 comment. (n. 2); see also United States v. Morales, 108 F.3d 1213, 1226 n.11 (10th Cir. 1997) (holding that application note to be an authoritative interpretation of the Guidelines). This Circuit has construed broadly the meaning of relevant conduct. See, e.g., United States v. Hankins, 127 F.3d 932, 934 (10th Cir. 1997); United States v. Johnson, 977 F.2d 1360, 1383 (10th Cir. 1992).

Every circuit to address the question has held that where a member of a conspiracy to distribute drugs handles drugs both for personal consumption and distribution in the course of the conspiracy, the entire quantity of drugs handled is relevant conduct for purposes of calculating the base offense level pursuant to the Guidelines. See United States v. Fregoso, 60 F.3d 1314, 1328-29 (8th Cir. 1995); United States v. Snook, 60 F.3d 394, 395-96 (7th Cir. 1995); United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993); cf. United States v. Antonietti, 86 F.3d 206, 209-10 (11th Cir. 1996) (holding that drugs possessed for personal use were relevant to offenses of manufacturing, possessing with intent to distribute, and conspiring to manufacture and possess with intent to distribute, without recognizing the distinctions among these offenses).[4] We conclude that this is the

---

[4] Many circuits that have addressed this question define relevant conduct
(continued...)

proper interpretation of the broad Guidelines concept of "relevant conduct," as

demonstrated by the facts of this case.[5]  Counts fronted Asch substantial

quantities of methamphetamine, at least a portion of which she sold in order to

satisfy her debt to him.  That she apparently chose to consume a substantial

portion of the balance does not alter the fact that she was "directly involved" with

_____

(...continued)
as all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction," U.S.S.G. § 1B1.3(a)(2). See, e.g., Antonietti, 86 F.3d at 209; Snook, 60 F.3d at 395-96.  That definition, however, only applies to "offenses for which grouping of counts would be required under § 3D1.2(d) had the defendant been convicted of multiple counts." U.S.S.G. § 1B1.3, comment. (n.3).  Under § 3D1.2(d), grouping of conspiracy to possess with  conspiracy to distribute or possess with intent to distribute is specifically prohibited.  But cf. United States v. Barela, 973 F.2d 852 (10th Cir. 1992) (holding that a conviction on the lesser included offense of possession could be grouped with convictions for conspiracy to distribute and aiding and abetting distribution).  Therefore, we apply the definition of relevant conduct found at U.S.S.G. § 1B1.3(a)(1) and the commentary thereto.

[5]  This court addressed a similar but distinct issue in United States v. Wood, 57 F.3d 913 (10th Cir. 1995).  In that case, we held that a sentencing court could consider drugs possessed for personal consumption when calculating the base offense level pursuant to the Sentencing Guidelines where the offenses of conviction were manufacturing controlled substances, possessing with intent to distribute controlled substances, maintaining a place for the purpose of manufacturing, distributing, and conspiring to commit the above offenses.  See id. at 915.  We reasoned that, because the quantity of drugs involved in each of these crimes had to be aggregated for sentencing pursuant to U.S.S.G. §§ 1B1.3(a)(2) and 3D1.2(d), and because the intended use of the controlled substance is irrelevant to the crime of manufacturing, manufactured drugs possessed for personal use could be included when calculating the defendant's base offense level.  See id. at 920.  Thus, the holding in Wood necessarily depends on the nature of the offense of manufacturing, an offense for which Asch was not convicted.

the entire quantity of contraband she obtained from her co-conspirator, Counts. U.S.S.G. § 1B1.3 comment. (n. 2); cf. United States v. Bara, 13 F.3d 1418, 1420 (10th Cir. 1994) (holding that drugs delivered to the defendant by the government in a reverse sting could be included as relevant conduct for purposes of the Sentencing Guidelines, despite the fact that the drugs were never distributed to the public, because the defendant agreed to and intended to distribute the drugs). Therefore, Asch's consumption of methamphetamine obtained from Counts was conduct relevant to their conspiracy for purposes of calculating her sentence under the Sentencing Guidelines.[6]

2.     Quantity of Drugs Involved in the Offense Under 21 U.S.C. § 841(b)

The scope of conduct that can be taken into consideration when determining the appropriate statutory sentencing range is narrower than the relevant conduct appropriate to a sentencing determination under the Guidelines. Our recent decision in Santos, 195 F.3d at 552, holds that "the operative drug quantities in the mandatory sentencing provisions of § 841(b) . . . are exclusively a function of the quantities involved in the offense of conviction." We made

---

[6] We need not decide whether our result would be different if the offense of conviction was distribution or possession with intent to distribute instead of conspiracy to commit those offenses. See United States v. Wyss, 147 F.3d 631, 632 (7th Cir. 1998) (holding that drugs used for personal consumption are not relevant to the crime of possession with intent to distribute); United States v. Kipp, 10 F.3d 1463, 1465-66 (9th Cir. 1993) (same).

clear that, unlike in the Guidelines context, drug quantities collateral to the underlying § 841(a) violation are not relevant to determinations of the statutory sentencing range pursuant to § 841(b). See id. at 551. Neither this Circuit, nor any other circuit, has addressed the question of whether drugs possessed for personal use are involved in the offense of conspiracy to distribute and possess with intent to distribute a controlled substance for statutory sentencing purposes.[7]

A conspiracy involves a common purpose or objective between at least two people to commit an unlawful act. See United States v. Evans, 970 F.2d 663, 669 (10th Cir. 1992).

> The objective of the conspiracy becomes especially important when the government attempts to establish a conspiracy on the basis of purchases and sales. Evidence that an intermediate distributor bought from a supplier might be sufficient to link that buyer to a conspiracy to distribute drugs because both buyer and seller share the distribution objective. However, a consumer generally does not share the distribution objective and thus would not be part of a

---

[7] One of our cases approaches, but does not address, this question. United States v. Arias-Santos, 39 F.3d 1070, 1078 (10th Cir. 1994), holds that an individual convicted of conspiracy to distribute is liable, under § 841(b), for all amounts handled by other conspirators that are within the scope of the agreement and reasonably foreseeable to the defendant. This standard is inapplicable to this case: It is specifically concerned with a conspirator's liability for the actions of co-conspirators, and there is little or no evidence in the record relating to amounts of drugs distributed by Counts to any other individuals, let alone evidence that such amounts were within the scope of the conspiracy for which Asch was convicted.

> conspiracy to distribute crack cocaine. Of course, a consumer may conspire to possess crack cocaine.

Id. Asch pleaded guilty to entering into a conspiracy with Counts with the shared objective of distributing and possessing with intent to distribute methamphetamine. In providing the factual basis for that plea, she testified that Counts fronted her drugs, which she either sold or consumed herself. The objective of the conspiracy was thus established on the basis of purchases and sales. See Evans, 970 F.2d at 669. The common objective of distribution and possession with intent to distribute can be inferred to the extent Counts fronted Asch drugs, she redistributed them, and she then satisfied her debt to Counts with the proceeds. With respect to drugs that Asch used for personal consumption, by contrast, the common objective of distribution is not readily apparent: Counts's objective may have been to distribute drugs but Asch's objective may have been to feed her powerful addiction. See id. (concluding that "a consumer generally does not share the distribution objective"). Drugs handled by Asch in transactions, or components of a transaction, that lacked the common objective of distribution were not involved in the offenses of conviction and cannot be included when determining the applicable sentencing range under 21 U.S.C. § 841(b). See Santos, 195 F.3d at 552.[8]

---

[8] Asch argues that the sentencing court should exclude both the quantities she obtained for personal consumption and the quantities she obtained for her

(continued...)

- 15 -

The framework of the governing statute compels this conclusion. Section 846 provides that any person who conspires to distribute or possess with intent to distribute drugs "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." 21 U.S.C. § 846. The object of the instant conspiracy was to distribute and possess with intent to distribute methamphetamine. While this circuit has not ruled on the question of whether drugs possessed for personal consumption can be included when determining the appropriate statutory sentencing range for someone convicted of distribution or possession with intent to distribute, one circuit has done so. See United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1494-95 (9th Cir. 1994). In Rodriguez-Sanchez, the Ninth Circuit held that personally consumed drugs cannot be included, reasoning that § 841(b) is intended to "punish distributors more harshly than consumers of drugs and to make sentence [sic] proportional to the amount of harm to society represented by the quantity of drugs to be distributed." Id. at 1496. We concur with this characterization of the statute's intent. Absent evidence Asch agreed to or intended to distribute the drugs she personally consumed, the proportionality embodied in the statute

_____

(...continued)
husband's consumption. Because the sharing of drugs constitutes distribution, see Fregoso, 60 F.3d at 1325; United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994), those quantities she obtained for the purpose of supplying her husband were involved in the offense for sentencing purposes.

- 16 -

requires that these quantities be excluded when determining the applicable sentencing range.

The government must prove the quantity of drugs involved in the offense of conviction "by a preponderance of the evidence at sentencing in order to trigger the mandatory minimum sentences prescribed in 21 U.S.C. § 841(b)." United States v. Silvers, 84 F.3d 1317, 1320 (10th Cir. 1996) (citing United States v. Underwood, 982 F.2d 426, 429 (10th Cir. 1992)). Under that standard, only those quantities of drugs that the government proves by a preponderance of the evidence Asch obtained from Counts with the intent to distribute could be included when determining the statutory sentencing range.[9] Such a burden might appear unduly onerous when, as in this case, the conspiracy to distribute and possess with intent to distribute drugs involved multiple transactions over an extended period of time. The district court in its role as fact finder, however, is permitted to infer that the entire quantity of drugs the defendant obtained from her co-conspirator during the course of the conspiracy to distribute, as proven by the government by a preponderance of the evidence, was obtained with the common objective of distribution. Cf. Wingfield v. Massie, 122 F.3d 1329, 1333

---

[9] While a defendant's statutory sentencing range also may be based on quantities of drugs handled by co-conspirators in the scope of the conspiracy which are reasonably foreseeable to the defendant, no such evidence was presented in this case. See supra note 7.

(10th Cir. 1997) (holding that "a jury is permitted to draw inferences of subjective intent from a defendant's objective acts"). Furthermore, we hold that a defendant must produce evidence tending to demonstrate that she always intended to personally consume some specific portion of the drugs received from her co-conspirator in order to place at issue the absence of a common objective. Cf. United States v. Wyss, 147 F.3d 631, 633 (7th Cir. 1998) (suggesting, without holding, that "when the defendant buys drugs both for his own consumption and for resale, he has some burden of producing evidence concerning the amount that he consumed—he cannot just say to the government, 'I'm an addict, so prove how much of the cocaine that I bought I kept for my own use rather than to resell'"). Evidence, including personal testimony, of actual consumption of specific quantities would be probative of such an intent. Although the defendant bears the burden of producing evidence of her intent to consume, we emphasize that the ultimate burden of proof on the quantity of drugs involved in the offense remains with the government at all times.

At sentencing, the district court did not determine whether the entire quantity of drugs Asch obtained from Counts was obtained with the intent to distribute, despite her testimony that she consumed approximately half of those drugs. On remand, it should make this finding in accordance with the burden of production and proof established above.

# C

Asch also argues that the district court improperly included in its sentencing calculations drugs she handled prior to her involvement in the conspiracy to which she pleaded guilty. Pursuant to <u>Santos</u>, a sentencing court is not permitted to take into account quantities of drugs collateral to the offense of conviction when determining the applicable sentencing range under § 841(b). <u>See</u> <u>Santos</u>, 195 F.3d at 551-52.

Asch pleaded guilty to conspiring with Counts and other named individuals to distribute and possess with intent to distribute methamphetamine between approximately June 1, 1996, and February 4, 1998. In making its findings at sentencing, the district court stated that using the low end of Counts's estimate, Asch had obtained 963.9 grams between May 1997 and January 1998. It continued:

> To reach the statutory minimum, she would have to have sold a bare – a mere 37 grams in – in the remainder of her transactions over 3 ½ years prior to her involvement with Counts which doesn't make any sense. But forget that. Just looking at Counts' testimony, it stretches credulity to believe that it was under 1,000 grams.
> . . .
> In the judgment of this judge, the United States has established overwhelmingly that there was 1,000 grams of drugs involved in this transaction. Counts' low estimate is only slightly higher than this witness' own estimate which she doesn't accept now but which was testimony before the Court, Exhibit 3, less than 60 grams difference,

and that discounts anything to Lee of an ounce and a half. That's all it would have to be. Over three – over that many years? Doesn't make any sense at all.

(X R. at 45-56.)

Based on these statements, it appears the district court, in calculating Asch's sentence, considered, but ultimately did not rely on, quantities of drugs she obtained from an individual named Lee as early as January 1994. This conduct was collateral to the offense of conviction and therefore irrelevant when determining the applicable statutory sentencing range. On remand, the district court should take notice of the fact that only drugs involved in the offense of conviction may be taken into account when determining the applicable statutory sentencing range under § 841(b).

**IV**

We **AFFIRM** Asch's conviction, but **REVERSE** and **REMAND** for resentencing consistent with this opinion.