

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2003

# USA v. Chambers

Precedential or Non-Precedential: Non-Precedential

Docket 02-2833

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Chambers" (2003). *2003 Decisions*. Paper 844.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/844

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2833

UNITED STATES OF AMERICA,

Appellee

v.

STUART CHAMBERS,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania

Chief District Court Judge: The Honorable Thomas I. Vanaskie
(D.C. Civ. No. 01-369)

Submitted Under Third Circuit L.A.R. 34.1(a)
January 28, 2003

Before: SLOVITER and RENDELL, Circuit Judges, and
DEBEVOISE,* Senior District Court Judge

(Opinion Filed: January 29, 2003)

OPINION OF THE COURT

_____

*Honorable Dickinson R. Debevoise, Senior United States District Judge for the District of
New Jersey, sitting by designation.

**DEBEVOISE, Senior District Court Judge**

Appellant, Stuart Chambers, pled guilty to one count of an information charging conspiracy to travel in interstate and foreign commerce in aid of the distribution and possession with intent to distribute cocaine base (crack) in violation of 18 U.S.C. §§1952 and 371 and to the second count of the information charging interstate travel in aid of racketeering activity in violation of 18 U.S.C. §§1952(a)(3) and 2. The District Court sentenced Chambers to 108 months of imprisonment followed by three years of supervised relief. The Court rejected Chambers's contentions that (i) his Base Offense Level should be 30 rather than 32 because some of the cocaine base was intended for personal use, (ii) the District Court should depart downwards based upon the low purity level of the cocaine base and iii) the Court should depart downwards based upon an asserted overstatement of his criminal history. On this appeal Chambers challenges the first two of these rulings. We find that the District Court ruled correctly and will affirm.

## I. Background

On June 13, 2001 Chambers, Angela Moultrie, Larry Butcher and Courtney Simard were stopped by a Pennsylvania State Police Officer at an exit of the Pennsylvania Turnpike. A plastic bag containing one chunk of a beige, rock-like substance having the appearance of crack cocaine was discovered in a suitcase in the car trunk. Subsequent tests disclosed that the substance contained cocaine base and caffeine with a net weight of 55.1 grams and a concentration of 45%. At the police station where the four persons were taken a guard discovered a beige rock-like substance in Chambers's pocket. Subsequent tests

2

disclosed that it contained cocaine base and caffeine with a net weight of 0.14 grams and a concentration of 72%.

During the course of subsequent proceedings Chambers gave conflicting statements. On August 23, 2001 he signed an affidavit in which he took full responsibility for the drugs, stating that Butcher and Moultrie had no knowledge of the crack cocaine. Chambers's counsel in a letter dated September 24, 2001 submitted a proffer statement on his behalf to the government. In the letter Chambers admitted that he had previously signed a false affidavit. He stated that he and Butcher were partners, and that when the car was stopped they were returning to Watertown from Philadelphia where they had traveled to purchase crack cocaine.

On motion of the government Chief District Court Judge Vanaskie dismissed indictments against Butcher and Moultrie. A two count information was filed against Chambers. Count I charged that on or about June 13, 2001 Chambers conspired to travel in interstate and foreign commerce in the aid of the distribution of and possession with intent to distribute cocaine base, in violation of 18 U.S.C. §§1952 and 371. Count II charged that Chambers traveled in interstate and foreign commerce with the intent to promote the distribution and possession with intent to distribute cocaine base and thereafter performed and attempted to perform acts to facilitate the promotion and carrying on of this unlawful activity in violation of §§1952(a)(3) and 2.

Chambers pled guilty to the information. The parties stipulated in the plea agreement that the Base Offense Level under the Sentencing Guidelines should not be less

3

than 30 or more than 32. The parties agreed that Chambers would argue at sentencing that the appropriate level was 30 and that the government would argue that the appropriate level was 32.

A Presentence Investigation Report ("PSR") was prepared. The PSR concluded that the Base Offense Level was 32 because the offense involved between 50 and 150 grams of cocaine base. With three levels deducted for acceptance of responsibility the Total Offense Level was determined to be 29. With a criminal history category of III, the Guideline range was 108-120 months.

## II. The Sentencing Proceedings

Judge Vanaskie held a sentencing hearing on June 26, 2002. Chambers advanced three contentions: i) The Base Offense Level should be 30 rather than 32 because some of the cocaine base was intended for personal use; ii) the district court should depart downwards based upon the purity level of the cocaine base; and iii) the court should depart downwards based upon over-statement of Chambers's criminal history.

With respect to the quantity of cocaine base, Chambers argued that in the case of a drug sale, whether or not a part of a conspiracy, the portion of the drugs that the seller held for personal use should not be counted in computing relevant conduct. Thus, of the 55.1 and 0.14 grams seized in this case, the portion that Chambers intended for personal use should not be counted, and the government had the burden of proving what was not intended for personal use. Judge Vanaskie rejected this argument, holding that in the case of a drug conspiracy charge, the entire quantity of drugs handled, including that intended for personal

4

use, is relevant conduct for the purpose of calculating the base offense level.  Further, he found that ". . . the mere assertion by the defense, the bold assertion by the defense that some part of it was for personal consumption is not enough to overcome the Government's evidence that, in this case, a 55-gram rock was found in the car, at the time of the arrest, that's enough, and defense has not come forward to require the Government to do anything more than it has in this case." (App. p. 49).

With respect to Chambers's motion for a downward departure based upon the low purity rate of the drug (45% for the cocaine base found in the car and 72% for the cocaine base found in Chambers's pocket), Judge Vanaskie referred to the Court's decision in United States v. Benish, 5 F.3d 20 (3d Cir. 1993), but noted that it preceded the Supreme Court's decision in Koons v. United States, 518 U.S. 81 (1996).  He agreed with the defense position that the low purity of a controlled substance involved in a crime cannot be categorically excluded as a basis for a downward departure.  He declined, however, to exercise his discretion, stating, " . . . while I recognize that if the purity level was sufficiently below what might be the typical purity level, I don't find that burden has been carried in this case to show that 45 percent is far below the typical level as to warrant a departure, and, therefore, I decline to depart on that basis and choose not to exercise my discretion to depart on that basis." (App. at p. 63)

The court also denied Chambers's motion to depart on the ground that there had been an over-statement of Chambers's criminal history.

Chambers appealed the ruling that his Base Offense Level should be 30 and the

denial of his motion for a downward departure based on the impurity of the seized drugs.

### III. Discussion

Chambers relies heavily upon United States v. Wyss, 147 F.3d 631 (7th Cir. 1988) for the proposition that the quantity of drugs which the seller holds for personal use should not be included in relevant conduct when determining the Base Offense Level. In that case the defendant was convicted of possession of marijuana with intent to distribute. The issue on appeal was whether the purchase of cocaine for personal consumption, rather than for sale, should have been counted as conduct relevant to the marijuana conviction and therefore used to enhance the sentence. The court held that "[i]t was, therefore, improper for the judge to take account of the defendant's possession of cocaine for personal use (if that is what she did) in sentencing him for possession with intent to distribute "Id. At 632. The instant case includes a conspiracy charge, and the Wyss opinion notes that the result would be different in the event of such a charge:

> The case would be different, as we noted in United States v. Snook, 60 F.3d 394 (7th Cir. 1995), if the charge were conspiracy rather than possession.
>
> • • •
>
> Suppose that X sells Y a kilogram of cocaine in circumstances that make Y a conspirator with X and not merely a buyer from him. The amount of drugs involved in the conspiracy is unaffected by the use that Y makes of the drugs. It makes no difference whether he sells the entire amount and buys drugs for his personal consumption on the open market with the proceeds or keeps a portion of the drugs to consume personally as compensation for his participation in the conspiracy. But the defendant in our case was not convicted of conspiracy and the judge made no finding that, convicted or not, he was a participant in a conspiracy.

Id. at 632

6

Courts of Appeals that have considered the issue support Judge Vanaskie's decision to include the amount of cocaine claimed to be for personal use. For example, in United States v. Asch, 207 F.3d 1238 (10th Cir. 2000) the court framed the issue as follows:

> This case requires us to address, as a matter of first impression, whether a sentencing court, when determining the applicable sentencing range for an individual convicted of conspiracy to distribute and possess with intent to distribute controlled substances, can, under the United States Sentencing Guidelines and 21 U.S.C. §841(b), include in its quantity calculations drugs possessed for personal consumption.

Id. at 1240.

The court held:

> Every circuit to address the question has held that where a member of a conspiracy to distribute drugs handles drugs both for personal consumption and distribution in the course of the conspiracy, the entire quantity of drugs handled is relevant conduct for purposes of calculating the base offense level pursuant to the Guidelines. *See* United States v. Fregoso, 60 F.3d 1314, 1328-29 (8th Cir. 1995); United States v. Snook, 60 F. 3d 394, 395-96 (7th Cir. 1995); United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993); cf. United States v. Antonietti, 86 F.3d 206, 209-1- (11th Cir. 1996) (holding that drugs possessed for personal use were relevant to offenses of manufacturing, possessing with intent to distribute, and conspiring to manufacture and possess with intent to distribute, and conspiring to manufacture and possess with intent to distribute, without recognizing the distinctions among the offenses). We conclude that this is the proper interpretation of the broad Guidelines concept "relevant conduct," as demonstrated by the facts in this case.

Id. at 1243, 1244

Although our court has not addressed this precise issue, we believe that the rulings of the courts of appeals that have addressed the issue are sound and we will follow them. Judge Vanaskie correctly held that the cocaine that Chambers intended for personal use

7

(whatever that amount may have been) did not affect computation of his Base Offense Level.

We also conclude that Judge Vanaskie's denial of Chambers's motion for a downward cannot be reviewed by this Court. Our holding in United States v. Benish, 5 F.3d 20 (3d Cir. 1993), might be interpreted to preclude departure based on the quality of the drug involved in the offense. Holding that the district court did not have discretion to depart downward for the age and sex of marijuana plants, we stated:

> Our decision is consistent with that of the Seventh Circuit in United States v. Upthegrove, 974 F.2d 55 56 (7th Cir. 1992), where the court held that a downward departure under section 2D1.1 based on the quality of marijuana was improper because "[i]t is clear from the text of the guidelines that the Sentencing Commission adequately took into consideration the quality of the drugs. The Sentencing Commission made an explicit decision to focus on the weight and not the purity of the drugs in determining the offense level."

Id. at 27, 28

After Benish was decided the Supreme Court in Koons v. United States, supra, called for an expansive application of the discretionary power to depart when sentencing under the Guidelines. In the belief that that opinion might have modified the Benish restrictions, Judge Vanaskie assumed that he had discretion to depart downward based on the quality of the drugs and decided not to exercise that discretion. We need not decide at this juncture the precise limitations imposed by Benish or whether Koons effected a modification of any such limitations. We do not have jurisdiction to review Judge Vanaskie's exercise of discretion, and if he lacked discretionary power to depart the result would have been no different.

8

Chambers advances the novel argument that failure to take into account the purity level of the cocaine violated his Fifth Amendment due process rights and Fourteenth Amendment equal protection rights. He has found no support in the cases and we find no support for this argument either in the cases or in reason and therefore reject this contention.

## IV. Conclusion

We conclude that Judge Vanaskie applied correctly the Sentencing Guidelines, and we will affirm the judgment of the District Court.

TO THE CLERK OF THE COURT:
Kindly file the foregoing Opinion.

/s/ Dickenson R. Debevoise
Senior District Court Judge