**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

DANIEL MONTGOMERY,

    Defendant - Appellee.

No. 05-3263

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 03-CR-20127-KHV)**

---

Daniel S. Goodman, Criminal Division, Appellate Section, U.S. Department of Justice, Washington, D.C., (Eric F. Melgren, United States Attorney, and Sheri P. McCracken, Assistant United States Attorney, District of Kansas, on the briefs), for Plaintiff - Appellant.

William F. Cummings, Cummings & Cummings, L.L.C., Wichita, Kansas, for Defendant - Appellee.

---

Before **KELLY**, **ANDERSON**, and **BEAM,**[*] Circuit Judges.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable C. Arlen Beam, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

The government appeals from the district court's judgment granting Defendant-Appellee Daniel Montgomery's motion for judgment of acquittal and vacating the jury's verdict based on insufficiency of the evidence. The government also contests the district court's alternative holding that Mr. Montgomery is entitled to a new trial. The government urges this court to reverse and reinstate the jury's verdict of guilty, directing the district court to sentence Montgomery under 21 U.S.C. § 841(b)(1)(B)(vii). In the alternative, the government argues that if we affirm the district court's judgment of acquittal, the district court should be instructed to enter judgment of conviction under 21 U.S.C. § 841(a)(1) and the lesser-included offense in 21 U.S.C. § 841(b)(1)(C). Our jurisdiction arises under 18 U.S.C. § 3731. We reverse, reinstate the verdict, and remand for sentencing.

Background

Mr. Montgomery rented space in a friend's home located at 1616 South 15th Street, in Kansas City, Kansas. In the house, Mr. Montgomery maintained a marijuana growing operation. Agents from the Drug Enforcement Agency (DEA) observed Mr. Montgomery purchasing a large amount of merchandise from a hydroponics[2] store. The DEA agents then obtained an administrative subpoena

---

[2] "Hydroponics" refers to the "growing of plants in nutrient solutions with or without an inert medium to provide mechanical support." Webster's Ninth

(continued...)

2

and learned that the house at 1616 South 15th Street had a much higher rate of electric use than comparable houses in the same neighborhood. After the agents recovered marijuana from a trash can located at the house, they obtained a search warrant.

When executing the warrant, DEA agents uncovered a large marijuana growing operation. Most of the marijuana plants were located in a large "grow room," but a smaller room contained two "mother plants" and "clones." A "mother plant" is a mature marijuana plant used to produce clippings that are put in a fertilized solution in the hope that they will subsequently sprout roots and become new marijuana plants.

The DEA agents counted 101 marijuana plants with fully developed root systems, stems, and leaves. A random sample of ten plants confirmed that the plants were in fact marijuana. Based on the sheer volume of marijuana contained in the house, the agents believed that the marijuana was not solely for personal use.

Mr. Montgomery was indicted on one count of possession with intent to distribute, 100 or more marijuana plants. 21 U.S.C. § 841(a)(1), (b)(1)(B) & 18 U.S.C. § 2. Aplt. App. at 9-10. At trial, the government called six witnesses, including three DEA agents, a forensic chemist, a utility company employee, and

---

[2](...continued)
Collegiate Dictionary 590 (9th ed. 1991).

the owner of the house at 1616 South 15th Street. Aplt. Br. at 7. Mr.

Montgomery rested without calling any witnesses. Instead, Mr. Montgomery

moved for a directed verdict of acquittal based on "no expert testimony in this

case that the defendant possessed a hundred or more marijuana plants." Aplt.

App. at 85. The district court denied the motion, ruling that ample evidence

established that the plants were marijuana. Id. at 88-89.

At the jury instruction conference, the parties and court agreed on the

language of Instruction 15, which read, in pertinent part:

> In order to prove that defendant is guilty of the crime charged in the indictment, the government must prove beyond a reasonable doubt the following three essential elements:
>
> FIRST:      On or about May 5, 2003, in the District of Kansas, defendant possessed 100 or more marijuana plants, a controlled substance;
>
> SECOND:   Defendant knew that the substance was marijuana, a controlled substance; and
>
> THIRD:     Defendant intended to distribute the controlled substance.

Id. at 51, 91-92.

In a subsequent instruction, the district court defined the term "distribute"

as "to deliver or to transfer possession or control of something from one person to

another." Id. at 52.

In his closing argument, Mr. Montgomery's counsel stated:

> Danny Montgomery grew marijuana. There is no question about that. The issues in this case are . . . . Did the government prove to you

4

beyond a reasonable doubt that he did so with an intent to distribute it? And secondly, did they prove to you beyond a reasonable doubt that it was a hundred plants or more

Id. at 359. Mr. Montgomery's counsel did not argue that Mr. Montgomery was required to possess 100 or more plants with the intent to distribute from each and every one. See id. at 359-74. The jury subsequently returned a verdict of guilty.

On February 2, 2005, fourteen days after the verdict, Mr. Montgomery filed a motion for judgment of acquittal contending that there was insufficient evidence to support the jury's quantity determination. Id. at 58. Essentially, Mr. Montgomery argued that the government had only performed chemical testing on ten plants and thus had failed to prove that all 101 plants were actually marijuana. The government responded by arguing that the DEA agents' testimony proved that all the plants were marijuana and that there was no evidence to the contrary. Id. at 61.

On March 21, 2005, the district court issued a show cause order stating:

Construed in the light most favorable to the government, the evidence at trial established that defendant possessed 101 marijuana plants. The evidence, however, did not suggest that defendant intended to distribute marijuana from all 101 plants. The government presented evidence that defendant kept some of the plants in a smaller room for purposes of cloning.

Id. at 69. The district court suggested it erred in giving Instruction 15 because "[i]t did not require the jury to find that defendant intended to distribute the controlled substance from 100 or more plants." Id. at 70. Moreover, according to

5

the court, "it should have instructed the jury that it could not consider plants which defendant held for purposes other than distribution, i.e. for cloning or for personal consumption." Id. The court had previously observed that "[t]he evidence suggests that defendant possessed at least two mother plants and that as to these plants, defendant only intended to clone additional marijuana plants from them." Id. at 69-70.

> In granting the motion for judgment of acquittal, the district court stated:
>
> The government presented no evidence that defendant intended to harvest or distribute marijuana from any part of the mother plants. The evidence is therefore insufficient to support a finding that defendant possessed the mother plants with intent to distribute marijuana from them. Therefore, at most, defendant possessed 99 marijuana plants with intent to distribute, and he is entitled to a judgment of acquittal.

Id. at 217 (footnote omitted). It also concluded that Instruction 15 was given in error because (1) it did not require the jury to find that Mr. Montgomery intended to distribute marijuana from 100 or more marijuana plants, and (2) because it allowed the jury to consider plants held for purposes other than distribution in the total plant count. Accordingly, the district court determined in the alternative, that Mr. Montgomery was entitled to a new trial under Fed. R. Crim. P. 33. Id. at 217-18.

6

We review de novo the grant of a motion for judgment of acquittal. United States v. Vallejos, 421 F.3d 1119, 1122 (10th Cir. 2005). We review the record "and ask only whether, taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find defendant guilty beyond a reasonable doubt." United States v. Scull, 321 F.3d 1270, 1282 (10th Cir. 2003). While we do require that substantial evidence support the conviction, "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." Vallejos, 421 F.3d at 1122.

I.     The Quantity of Marijuana Plants Involved in the Offense

Mr. Montgomery was charged with violating 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B). Section 841(a)(1) proscribes possession with intent to distribute a controlled substance and § 841(b)(1)(B)(vii) is a complementary provision that provides the penalty for a violation of § 841(a)(1) involving 100 or more marijuana plants, regardless of weight. To sustain a conviction for possession with intent to distribute, the government must prove beyond a reasonable doubt that a defendant: "(1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance." United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000). Furthermore, when, as in this case, the government elects to charge a defendant

with possessing with intent to distribute a certain quantity of drugs, that quantity of drugs becomes an element of the charged offense if the quantity triggers a sentence beyond the maximum allowed for violation of the base § 841(a)(1) offense. United States v. Jones, 235 F.3d 1231, 1236 (10th Cir. 2000). Possession of the substance can be actual or constructive. McKissick, 204 F.3d at 1291. In addition, a "jury may infer intent to distribute from the possession of large quantities of drugs." United States v. Pulido-Jacobo, 377 F.3d 1124, 1131 (10th Cir. 2004).

As noted, the district court determined that for Mr. Montgomery to be convicted under § 841(b)(1)(B)(vii), the government had to prove that he intended to distribute from each of 100 or more marijuana plants. The district court's interpretation is not supported by the plain language of the statute; hence, the district court evaluated the evidence using an incorrect legal standard and came to an incorrect result.

Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to . . . possess with intent to . . . distribute . . . a controlled substance . . . ." Section 841(b)(1)(B)(vii) provides for a specific penalty given a violation of § 841(a)(1) "involving . . . 100 or more marijuana plants regardless of weight." The statute itself does not define the word "involving." However, the root word "involve" means "to have within or as part

8

of itself." Webster's Ninth Collegiate Dictionary 637 (9th ed. 1991).[3] Webster's lists the words "include" and "entail" as relevant synonyms for this meaning of "involve." Id. Similarly, the American Heritage Dictionary defines "involve" as "[t]o contain as a part; include." American Heritage Dictionary (4th ed. 2000). "Involves" or "involving" are merely inflected forms of the word "involve" and do not vary from the root in core meaning. Given these definitions, and the common meaning attached to the word involve, the penalties of § 841(b)(1)(B)(vii) are triggered when the predicate violation of § 841(a)(1), has as a part or includes, 100 or more marijuana plants.

In reaching its interpretation that a defendant must intend to distribute from each of the plants comprising the 100 plant minimum, the district court relied on United States v. Asch, 207 F.3d 1238 (10th Cir. 2000), and United States v. Rodriguez-Sanchez, 23 F.3d 1488 (9th Cir. 1994). In Asch, we held that methamphetamine kept for personal use should be excluded from the base amount calculation under § 841(b)(1). 207 F.3d at 1246. We held that "drug quantities collateral to the underlying § 841(a) violation are not relevant to determinations of the statutory sentencing range pursuant to § 841(b)." Id. at 1245. In

---

[3] The Supreme Court has often turned to dictionary definitions to discern the plain meaning of a word. See, e.g., Mississippi v. Louisiana, 506 U.S. 73, 78 (1992) (using Webster's Dictionary to define the word "exclusive"). While we recognize a dictionary definition is not always sufficient to determine a statute's plain meaning, we think the definitions of "involve" cited herein capture the common usage of the word and relate logically to the statute's other language.

9

Rodriquez-Sanchez, the Ninth Circuit held that only methamphetamine intended for distribution, not that held for personal use, could be added to the base amount under § 841(b)(1). 23 F.3d at 1491, 1496.

These cases do not suggest that a defendant must intend to distribute marijuana from each plant comprising the 100 plant minimum. Both Asch and Rodriguez-Sanchez involved a finite amount of processed narcotics. Finite quantities of processed narcotics kept for personal use are not a part of the underlying offense of possession with intent to distribute. In other words, a person possessing processed narcotics both for distribution purposes and for personal use is free to sell the distribution quantity regardless of the amount that he keeps for personal use. The holdings in Asch and Rodriguez-Sanchez are fully compatible with our definition of the word "involving" because processed narcotics kept for personal use are not a part of the underlying § 841(a)(1) offense. It is also worth noting that, unlike in Asch and Rodriguez-Sanchez, there is no evidence in this case suggesting the mother plants were kept solely for personal use.

Unlike finite quantities of narcotics kept for personal use, a reasonable jury could conclude that Mr. Montgomery's mother plants were a part of the marijuana growing operation. The testimony at trial revealed that Mr. Montgomery managed an extensive marijuana growing operation in which marijuana could be harvested for distribution or personal use. The district court correctly found that

10

all 99 plants could be counted for distribution, even though a portion of each plant might have been for personal use. Aplt. App. at 217. Yet, the district court apparently concluded that the two mother plants were not involved in the predicate § 841(a)(1) offense because they were used only for cloning, and the government "presented no evidence that defendant intended to harvest or distribute marijuana from any part of the mother plants." Id. Instead of categorically excluding the mother plants from the base count because they were used for cloning, the district court should have considered whether the mother plants, as used for cloning purposes, contributed to the predicate § 841(a)(1) offense.

The evidence plainly supports the reasonable inference that some of Mr. Montgomery's marijuana plants were clones of the two mother plants. DEA Agent Brent Coup testified that upon his entry of the home at 1616 South 15th Street, he located a number of "growing trays" and "grow mix" in a closet. Id. at 140-42. He testified how the trays and grow mix would have been used to construct a hydroponic marijuana growing system. Id. He also testified that he observed a "grow room" in the house, id. at 143, containing ventilation fans, a thermometer, humidity gauge, and track lighting, and easy-listening music (believed to help the plants grow better), id. at 143-46. He testified that he located supplies used for the cloning of marijuana plants including highly fertilized pieces of soil called "grow blocks," razor blades used to cut shoots from

11

mother plants, and clay pellets that the plants are placed into once they establish roots. Id. at 150-52. While most of the marijuana plants found were located in the grow room, several small cloned marijuana plants were located in a room adjacent to the growing room. Id. at 156-57. Agent Coup testified that these clones had established root systems. Id. at 156. Located in the room with the potted clones were the mother plants. Id. at 157.

Taking the reasonable inference that some of the 99 "distribution plants" found in the house were clones of the mother plants, it flows logically that the mother plants were used or useful in Mr. Montgomery's distribution enterprise. Thus they were a part of the predicate § 841(a)(1) offense. This is simple "but for" causation. But for the mother plants, some, if not all, of the 99 other plants would not exist. But for the 99 plants, Mr. Montgomery would not have possessed with intent to distribute, marijuana. Therefore, the mother plants are a part of Mr. Montgomery's distribution enterprise and are a part of the predicate § 841(a)(1) offense that Mr. Montgomery "knowingly or intentionally . . . possess[ed] with intent to . . . distribute."

In sum, this case is unlike Asch or Rodriguez-Sanchez because there is a causal link between the mother plants and Mr. Montgomery's distribution enterprise that did not exist between the methamphetamine kept for personal use and that kept for distribution. Because we conclude that the two mother plants can also be counted toward the total, a reasonable jury could find that Mr.

12

Montgomery possessed with intent to distribute, 101 marijuana plants.

II.     A New Trial In the Alternative

Having rejected the district court's legal premise for the grant of a new trial, we also note that the district court lacked authority to grant a new trial because Mr. Montgomery never moved for one. Fed. R. Crim. P. 33(a), states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Mr. Montgomery moved for a judgment of acquittal, but he never moved for a new trial. A motion for a new trial based on anything other than newly discovered evidence must be filed within seven days of the verdict. Fed. R. Crim. P. 33(b)(2). We have held that this time period constitutes a "jurisdictional limit on the district court's power to act." United States v. Miller, 869 F.2d 1418, 1420 (10th Cir. 1989).

Fed. R. Crim. P. 29(d)(1) states that "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Yet, even this rule requires that a motion for new trial be before the court. Because Mr. Montgomery never filed a motion for new trial[4], much less one within seven days of the verdict, the district court had no

---

[4] Mr. Montgomery suggests that his motion for judgment of acquittal could be construed by the district court as a motion for new trial. Aplee. Br. at 9. We find nothing in Mr. Montgomery's motion to even remotely suggest he sought a

(continued...)

13

jurisdiction to order a new trial.

REVERSED.  We REINSTATE the jury's verdict and REMAND for sentencing.

---

[4](...continued)
new trial.  Nor does the district court's memorandum and order suggest that it construed Mr. Montgomery's motion for judgment of acquittal as a motion for new trial.  Regardless, even if Mr. Montgomery's motion for judgment of acquittal could be construed as one for a new trial, it was filed fourteen days after the judgment of guilty, seven days too late to satisfy the jurisdictional requirement.