FILED
United States Court of Appeals
Tenth Circuit

January 10, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL MONTGOMERY,

Defendant - Appellant.

No. 07-3069

(D. Kansas)

(D.C. No. 03-CR-20127-KHV)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Daniel Montgomery was convicted following a jury trial of one count of possession with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 2. He was sentenced to 120 months' imprisonment.[1] On appeal, Montgomery

challenges his conviction, which we affirm.


## BACKGROUND

Laren Culver rented space in his house at 1616 South 15th Street in Kansas

City, Kansas, to his friend, defendant Montgomery. With Culver's knowledge

and permission, Montgomery grew marijuana plants in two back rooms of the

house. Culver testified that he, as well as other friends who came to visit

Montgomery, smoked marijuana provided to them by Montgomery.

On April 22, 2003, Drug Enforcement Administration ("DEA") special

agent Brent Coup observed Montgomery purchasing a large amount of

merchandise from a hydroponics store. When agent Coup performed a criminal

history check on Montgomery, he discovered that Montgomery had been charged

with a misdemeanor marijuana violation in 1999 and had been convicted in 1990

for trafficking 100 pounds of marijuana. Coup then obtained an administrative

---

[1]This case has been before our court once before. Following the jury finding of guilt, Montgomery filed a motion for acquittal. The district court issued an order to show cause why the court should not grant a new trial or, alternatively, enter a judgment of acquittal. The court subsequently granted Montgomery's motion for judgment of acquittal, vacating the jury's guilty verdict.

On appeal, this court reversed the district court's ruling and remanded for sentencing. United States v. Montgomery, 468 F.3d 715 (10th Cir. 2006), cert. denied, 127 S. Ct. 1389 (2007). On remand, Montgomery was sentenced to 120 months' imprisonment.

subpoena and learned that the house at 1616 South 15th Street used much more electricity than comparable houses in the same neighborhood. Coup also observed an unusual venting system and a temperature regulated attic fan at the house, which he knew was commonly associated with indoor marijuana growing operations. He also retrieved numerous marijuana stems and clippings from the trash at 1616 South 15th Street. Coup then obtained a search warrant for the house.

When the DEA agents executed the warrant, they discovered a large marijuana growing operation at the back of the house. Most of the marijuana plants were in a large growing room, but a smaller room contained two "mother plants" and "clones."[2] The agents found "101 marijuana plants with fully developed root systems, stems, and leaves." Montgomery, 468 F.3d at 717. The agents randomly sampled ten of the plants, which confirmed that they were, in fact, marijuana.

Montgomery was thereafter indicted on one count of possession with intent to distribute 100 or more marijuana plants. At trial, the government called six witnesses, whereas Montgomery called none. When Montgomery moved for a directed verdict of acquittal on the ground that "there is no expert testimony in

_____

[2]As we explained in our prior Montgomery opinion, "[a] 'mother plant' is a mature marijuana plant used to produce clippings that are put in a fertilized solution in the hope that they will subsequently sprout roots and become new marijuana plants." Montgomery, 468 F.3d at 717.

this case that the defendant possessed a hundred or more marijuana plants," Tr. of

Mot. for Directed Verdict for Acquittal at 2, R. Vol. III, the district court denied

the motion, ruling that ample evidence established that the plants were marijuana.

At the jury instruction conference, the parties and court agreed on the

language of Instruction 15, which stated, in pertinent part, as follows:

> In order to prove that defendant is guilty of the crime charged in the
> indictment, the government must prove beyond a reasonable doubt
> the following three essential elements:
> <u>FIRST</u>:  On or about May 5, 2003, in the District of Kansas,
> defendant possessed 100 or more marijuana plants, a controlled
> substance;
> <u>SECOND</u>:  Defendant knew that the substance was marijuana, a
> controlled substance; and
> <u>THIRD</u>:  Defendant intended to distribute the controlled substance.

Instr. No. 15, R. Vol. I, tab 45.  Instruction 16 then defined the term "to

distribute" as meaning "to deliver or to transfer possession or control of

something from one person to another."  Instr. No. 16, <u>id.</u>  At the instruction

conference, the court proposed adding an additional sentence to Instruction 16:

"it does not include, however, distributing a small amount of marijuana for no

remuneration."  Tr. of Instr. Conference at 10, R. Vol. III.  The government

countered by arguing that such an instruction was not applicable to a case in

which the defendant was charged, not with distribution, but with possession with

intent to distribute.  Government counsel argued, "I don't have to prove that he's

distributed a whole bunch of marijuana, only that he's possessed a hundred plants

of marijuana with the intent to distribute.  I can show intent to distribute by one

-4-

distribution." Id. at 19. The court ultimately agreed with the government and gave the original Instruction 16 defining the term "to distribute" without the proposed additional sentence excluding from that term the distribution of a small amount of marijuana for no remuneration. Neither the government nor Montgomery objected to the proposed verdict form, which did not contain a special verdict form allowing the jury to find that Montgomery distributed a small amount of marijuana for remuneration.

At closing argument, Montgomery's counsel did not dispute that "Montgomery grew marijuana. There is no question about that." Tr. of Jury Trial at 236, R. Vol. IV. Defense counsel then stated that, "The issues in this case are two . . . : Did the government prove to you beyond a reasonable doubt that he did so with an intent to distribute it? And secondly, did they prove to you beyond a reasonable doubt that it was a hundred plants or more." Id. He proceeded to argue those two points, asserting that there was no evidence of any distribution in this case, and there was insufficient proof that all the plants found at Montgomery's house were, in fact, marijuana. After receiving the case, the jury returned a guilty verdict.

Montgomery appeals his conviction, arguing: (1) the warrant and affidavit in support of the warrant lacked probable cause to justify entry into Montgomery's house, in violation of the Fourth Amendment; (2) the district court erred by failing to give the jury a special verdict form allowing it to find that

Montgomery distributed a small amount of marijuana without remuneration; and (3) the prosecutor undermined the fairness and integrity of the trial by denigrating defense counsel during her examination of witnesses and closing argument.

## DISCUSSION

### I. Sufficiency of warrant and affidavit

Montgomery filed a motion to suppress, arguing there was insufficient probable cause to support the warrant. The district court denied the motion, finding there was sufficient probable cause for the issuance of the warrant or, in the alternative, the good faith exception to the exclusionary rule supported denial of the motion to suppress.

"When reviewing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and consider the evidence in the light most favorable to the Government." United States v. Zamudio-Carrillo, 499 F.3d 1206, 1209 (10th Cir. 2007). "Nevertheless, Fourth Amendment reasonableness is a question of law, so we review de novo the district court's determination of . . . probable cause." United States v. Traxler, 477 F.3d 1243, 1246 (10th Cir.), cert. denied, 128 S. Ct. 254 (2007). More specifically, "[d]eterminations relating to the sufficiency of a search warrant and the applicability of the good-faith exception are conclusions of law, . . . which this court reviews *de novo*." United States v. Danhauer, 229 F.3d 1002, 1005 (10th

Cir. 2000). Finally, while we review the district court's ruling on the sufficiency of a search warrant de novo, we do not review de novo the determination of probable cause by the issuing judge or magistrate. Rather, a state judge's "decision to issue a warrant is entitled to great deference," and we "need only ask whether, under the totality of the circumstances presented in the affidavit, the [state] judge had a 'substantial basis' for determining that probable cause existed." United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Soderstrand, 412 F.3d 1146, 1152 (10th Cir. 2005) (further quotation omitted).

In this case, the affidavit in support of the warrant recounted the DEA agents' observation of Montgomery purchasing hydroponics equipment from a hydroponics store; agent Coup's observation of two dryer vents and a temperature regulated attic fan on the roof of Montgomery's residence; Coup's discovery of Montgomery's two prior marijuana events; his discovery that Montgomery's residence was using electricity at a "significantly higher" rate than the two

-7-

comparable houses in the neighborhood; and his recovery of "green vegetation stems and numerous green leafy clippings," which tests proved were marijuana, in the trash outside Montgomery's house. Affidavit in Support of a Search Warrant at 2, Gov. Ex. A, attached to tab 16, R. Vol. I. Montgomery argues the warrant and affidavit in this case "present[] no probable cause relative to drug trafficking," Appellant's Op. Br. at 16, and recite activities or circumstances which are consistent with legal activities.

Montgomery misses the point when he argues the affidavit and warrant presented no evidence of drug trafficking. Given the charges against Montgomery, the government only needed to prove *possession* of 100 or more marijuana plants *with intent to distribute*. And while several of the activities or circumstances stated in the affidavit and warrant might individually be consistent with legal activity, taken together, the statements in the affidavit and warrant are completely consistent with, and suggestive of, a hydroponic indoor marijuana growing operation. Thus, the evidence provided a substantial basis for the state judge's finding of probable cause.

Even were we to conclude that the affidavit and warrant did not provide sufficient probable cause, we would nonetheless affirm the district court's conclusion that the good faith exception to the exclusionary rule applies. In United States v. Leon, 468 U.S. 897 (1984), "the Supreme Court adopted a good-faith exception to the application of the exclusionary rule and specifically applied

that exception where 'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting Leon, 468 U.S. at 920). "In this circuit, we have concluded that 'Leon's good faith exception applies only narrowly, and ordinarily only when an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer.'" United States v. Cos, 498 F.3d 1115, 1132 (10th Cir. 2007) (quoting Herrera, 444 F.3d at 1249).

In this case, the DEA agents searched Montgomery's house in reliance on the warrant issued by a state judge. "When reviewing the reasonableness of an officer's reliance upon a search warrant, this court must examine the underlying documents to determine whether they are 'devoid of factual support.'" Danhauer, 229 F.3d at 1006 (quoting United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993) (quotations and italics omitted)). The Leon Court recognized four situations in which an officer would not have reasonable grounds for believing that a search warrant had been properly issued. In any of those situations, the good-faith exception to the exclusionary rule is inapplicable. Thus, when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," Leon, 468 U.S. at 923 (further quotation omitted), the good-faith exception does not apply. Additionally, the exception does not apply "when a warrant is so facially deficient

that the executing officer could not reasonably believe it was valid." Danhauer, 229 F.3d at 1007 (citing Leon, 468 U.S. at 923).

Montgomery argues that "the insufficiency of the affidavit should have been obvious to the experienced agent preparing the warrant and to the officers executing the warrant." Appellant's Op. Br. at 19. We disagree. As the analysis above demonstrates, the affidavit and warrant were hardly "facially deficient" or "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

## II. Failure to give special verdict form

Montgomery argues the district court "erred in failing to give a special verdict form allowing the jury to find that Mr. Montgomery possessed with the intent to distribute a small amount of marijuana for no remuneration." Appellant's Op. Br. at 20. As indicated, Montgomery was charged with possession with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). Among the penalty provisions under that section is § 841(b)(4), which provides that "any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in [§ 844–i.e. subject to penalties for simple possession]." 21 U.S.C. § 841(b)(4). As our factual recitation above indicates, there was considerable discussion whether there should be an addition

to the jury instructions reflecting this section, presumably to allow the jury to find Montgomery guilty of distributing a small amount of marijuana for no remuneration. Ultimately, all parties agreed to leave Instructions 15 and 16 as written, with no addition to permit any distinction between "distribution" and "distributing a small amount of marijuana for no remuneration." Indeed, defense counsel stated "I think it's favorable to the defendant and I don't object." Tr. of Instr. Conference at 9, R. Vol. III. As for the verdict form, defense counsel specifically stated he had no objection to it. Id. at 28.

In this situation, we agree with the government that Montgomery has waived any objection to the verdict form. "'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" United States v. Teague, 443 F.3d 1310, 1314 (10th Cir.), cert. denied, 127 S. Ct. 247 (2006) (quoting United States v. Olano, 507 U.S. 725, 733 (1993)). Here, defense counsel was very aware of this entire issue. The court and both counsel engaged in considerable discussion and debate about whether it was appropriate to allow the jury to give effect to the concept of a small distribution for no remuneration. Ultimately, the court decided not to. Under these circumstances, we conclude that Montgomery waived any argument on this point.[3]

---

[3]In any event, as the government argued and points out on appeal, Montgomery was not charged with distribution. He was charged with possession

(continued...)

### III. Prosecutorial misconduct

Finally, Montgomery argues that the prosecutor undermined the fairness and integrity of the trial by denigrating defense counsel during her examination of witnesses and during closing argument. He concedes that he failed to object to any of the prosecutor's statements to which he now objects. We accordingly only review those comments for plain error. United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir. 1994). To satisfy the plain error standard, Montgomery must prove that any error was plain and affected substantial rights. United States v. Haney, 318 F.3d 1161, 1166 (10th Cir. 2003) (en banc). Even if these tests are met, we may correct that error only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1166-67 (quoting Olano, 507 U.S. at 732).

We have carefully reviewed all of the prosecutor's statements or comments Montgomery now challenges. Even if any of them were improper, we conclude that Montgomery's substantial rights were not violated. The evidence against Montgomery was overwhelming, and it is highly unlikely that the few comments by the prosecutor in any way influenced the jury.

---

[3](...continued)
with intent to distribute. "[A] jury may infer intent to distribute from the possession of large quantities of drugs." United States v. Pulido-Jacobo, 377 F.3d 1124, 1131 (10th Cir. 2004). [3]

**CONCLUSION**

For the foregoing reasons, we AFFIRM Montgomery's conviction.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge