**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JULIEANN LOGSDON,

    Defendant - Appellant.

No. 19-7055

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:19-CR-00023-RAW-1)**
_____

Gary L. Davis, II, Gary Davis Law Group, Tulsa, Oklahoma, for Defendant-Appellant.

Linda A. Epperley, Assistant United States Attorney (Brian J. Kuester, United States Attorney, and Gregory Dean Burris, Assistant United States Attorney, with her on the brief), Office of the United States Attorney, Muskogee, Oklahoma, for Plaintiff-Appellee.
_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

Defendant-Appellant Julieann Logsdon pleaded guilty to making a false statement in violation of 18 U.S.C. § 1001. She made the statement, which concerned her whereabouts and activities on the night of a suspected arson, to a federal agent investigating that arson. At sentencing, the district court applied a

cross-reference that increases the Sentencing Guidelines' advisory range where "the offense involved arson." U.S.S.G. § 2B1.1(c)(2). Logsdon challenges the application of the cross-reference. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## I.

Mail-Mart is a mail and shipping business in Tahlequah, Oklahoma. On the morning of August 26, 2017, Sarah Hicks, an employee of Mail-Mart, arrived to open the store and discovered that a fire had occurred. Hicks reported the fire and Tahlequah officials called in the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). ATF Special Agent Ashley Stephens determined that the fire was an arson and opened an investigation.

All Mail-Mart employees, including Julieann Logsdon, were interviewed as part of the investigation. At the start of their interview on August 29, 2017, Agent Stephens told Logsdon that he was investigating the Mail-Mart fire. Logsdon confirmed that she understood the purpose of the interview. She told Agent Stephens that she left Mail-Mart around 4:30 p.m. on the date of the fire but returned around 9:00 p.m. She explained that she and her husband were on their way to Tulsa, Oklahoma, when they realized she did not have her debit card. She claimed that they drove back to Tahlequah to look for the card, first unsuccessfully searching her home, and then checking Mail-Mart. She estimated arriving at Mail-Mart around 9:00 p.m. and said she reset the alarm before leaving.

Investigators disproved Logsdon's story when they compared Mail-Mart's alarm records with her cell phone records. The alarm records revealed that Mail-Mart's alarm was deactivated at 9:33 p.m. But Logsdon's phone records placed her in the Tulsa area at around 9:45 p.m., when the owner of Mail-Mart called her. Tulsa is over sixty miles from Tahlequah, so it would have been impossible for Logsdon to deactivate an alarm at 9:33 p.m. in Tahlequah and take a call in Tulsa twelve minutes later.

Logsdon was interviewed again on September 21, 2017. After waiving her *Miranda* rights, she repeated the substance of her initial statement but admitted the twelve minutes between the time shown on the alarm records and the time shown on the phone records would not be enough time to travel to Tulsa. She attempted to reconcile the 9:33 p.m. alarm deactivation with her original narrative by stating that the alarm might not have beeped when she went into Mail-Mart. Logsdon avoided further questioning about the alarm and requested an attorney.

On February 13, 2019, Logsdon was charged with making a false statement in violation of 18 U.S.C. § 1001. Her indictment stated that she "claim[ed] she entered the Mail[-]Mart and turned off the alarm, at a specific date and time," when she "knew" that "she did not enter the Mail[-]Mart and did not turn off the alarm at that time." App'x Vol. I at 9. Logsdon entered a guilty plea on April 1, 2019. She told the magistrate judge that she had "made a false statement to an ATF agent that was material in his investigation." *Id.* at 43–44. The Presentence Report ("PSR") calculated Logsdon's offense level at 24 after applying a Federal Sentencing

3

Guidelines ("Guidelines") cross-reference for an "offense [that] involved arson." U.S.S.G. § 2B1.1(c)(2); *see also id.* § 2K1.4(a)(1).

After credit for acceptance of responsibility, the PSR reduced Logsdon's offense level to 21 and calculated a Guidelines range of 37–46 months of imprisonment. Logsdon moved for a variance, which the district court partially granted. The court sentenced her to eighteen months of imprisonment followed by two years of supervised release.[1] At the sentencing hearing, the court upheld the application of the arson cross-reference in the PSR, explaining that the Mail-Mart fire "was an arson, [and Logsdon] knew it was being investigated as an arson at the time she made her false statement." App'x Vol. I at 75.

Logsdon appeals the application of the cross-reference. She argues that her false statement offense did not involve arson because there was no evidence tying her to the arson under investigation and her statement did not mention, let alone cause, arson. If we agree that the cross-reference was improperly applied, she argues that the government should be barred from introducing new evidence on remand. We do not reach that issue because we affirm the application of the cross-reference and, with it, Logsdon's sentence.

---

[1] Although Logsdon is no longer incarcerated, her supervised release is ongoing, so this appeal is not moot. *See United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008).

**II.**

The applicable provision of the Guidelines for a violation of 18 U.S.C. § 1001 is § 2B1.1. It instructs courts to apply a cross-reference under § 2K1.4 "[i]f the offense involved arson." U.S.S.G. § 2B1.1(c)(2). The effect is a base offense level of 24. *See id.* § 2K1.4(a)(1).

Logsdon contends that the cross-reference does not apply to her false statement in the Mail-Mart investigation because she did not mention arson and there was no evidence that she was involved in the arson under investigation. She asks us to hold that making a false statement during an arson investigation is insufficient to trigger the cross-reference. To assess these arguments, we must interpret the phrase "offense involved arson," as it appears in the Guidelines. That is a question of law reviewed *de novo*. *See United States v. Maldonado-Passage*, 4 F.4th 1097, 1103 (10th Cir. 2021). "We interpret the Sentencing Guidelines according to accepted rules of statutory construction." *United States v. Sweargin*, 935 F.3d 1116, 1120 (10th Cir. 2019) (quoting *United States v. Robertson*, 350 F.3d 1109, 1112 (10th Cir. 2003)). "When interpreting a guideline, we look not only to the language in the guideline itself, but also to the Sentencing Commission's interpretive and explanatory commentary to the guideline." *Id.* at 1120–21.

**III.**

To assess whether the district court properly applied the arson cross-reference, we will consider what each word in the provision that invokes it—"offense," "involved," and "arson"—means in light of the Guidelines, our jurisprudence, and

5

Logsdon's false statement offense. The Guidelines' commentary defines "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. 1(I). No other meaning is apparent in the other applicable Guidelines provisions, so this definition controls. *See id.* §§ 2B1.1, 2K1.4. Logsdon's "offense of conviction" falls under 18 U.S.C. § 1001 which, as relevant here, criminalizes "mak[ing] any *materially* false, fictitious, or fraudulent statement or representation" in a "matter within the jurisdiction of the executive . . . branch." 18 U.S.C. § 1001(a)(2) (emphasis added). Relevant conduct includes, in part, (1) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and (2) "all harm that resulted from the acts and omissions . . . and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a). That means we consider the specific factual circumstances surrounding Logsdon's false statement for purposes of evaluating whether her offense involved arson. *See Witte v. United States*, 515 U.S. 389, 393 (1995) ("Under the Sentencing Guidelines, the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction."). By using the word "offense," Guidelines provisions like the one at issue here instruct courts familiar with a case's factual background to assess whether the statutory crime, as committed by the defendant, implicates a given cross-reference. *See id.*

6

Next, the meaning of "arson" is not contested here. The district court found by a preponderance of the evidence that the Mail-Mart fire was an arson. More importantly, Logsdon does not challenge the district court's conclusion that she knew the fire was being investigated as an arson when Agent Stephens interviewed her and she made the false statement charged in her indictment. *See* Oral Arg. at 7:47–8:00.

Finally, the Guidelines do not define the word "involved," so we turn to its plain meaning. *See United States v. Archuleta*, 865 F.3d 1280, 1287 (10th Cir. 2017). As Logsdon points out, however, we have been down this road before. In *United States v. Montgomery*, 468 F.3d 715 (10th Cir. 2006), we interpreted the word "involving," which appeared in a criminal statute imposing a mandatory minimum sentence for "violation[s] . . . involving . . . 100 or more marihuana plants." *See* 21 U.S.C. § 841(b)(1)(B)(vii). We see no reason to depart from the meaning of "involving" we adopted in *Montgomery*.[2]

In *Montgomery*, DEA agents found ninety-nine marijuana plants in one room of the defendant's residence and two "mother plants" in another room. 468 F.3d at 717. Mother plants, we explained, are "mature marijuana plant[s] used to produce clippings that are put in a fertilized solution in the hope that they will subsequently sprout roots and become new marijuana plants." *Id.* The offense charged in

---

[2] The government acknowledges *Montgomery*, but devotes more of its brief to decisions interpreting the phrase "involved in." We think such a focus is misplaced. The only difference between "involving" (*Montgomery*) and "involved" (this case) is verb tense. Both words share the same root. *See Montgomery*, 468 F.3d at 720 ("'Involves' or 'involving' are merely inflected forms of the word 'involve' and do not vary from the root in core meaning.").

*Montgomery* was possessing a controlled substance with intent to distribute, and federal law imposed a mandatory minimum sentence for a "violation . . . involving . . . 100 or more marihuana plants." 21 U.S.C. § 841(b)(1)(B)(vii). The issue was whether the defendant's operation "involved" the two mother plants. That would bring the total to 101 and trigger the mandatory minimum sentence.

We surveyed dictionary definitions and assessed the "common meaning" of the word "involve" to reason that the mandatory minimum sentence applied "when the predicate violation . . . *has as a part or includes*, 100 or more marijuana plants." *Montgomery*, 468 F.3d at 720 (emphasis added). The mother plants were "a part of" the predicate distribution offense because, although they were not directly distributed, the evidence suggested that they enabled the growth of plants that were distributed. *Id.* at 721. We described the dynamic as akin to "but for" causation: "[b]ut for the mother plants, some, if not all, of the 99 other plants would not exist . . . [and] Montgomery would not have possessed with intent to distribute, marijuana." *Id.* All three elements of the relationship set out in the statute—the predicate "violation," the plants themselves, and the "involving" connector—were critical to applying it to the facts of the case. The same is true here, and it leads us to conclude that Logsdon's material false statement in an arson investigation involved arson.

The predicate term "offense," defined broadly in the Guidelines as discussed above, dictates the nature and range of the activities that we consider for arson involvement. Under *Montgomery*, the "involved" connector complements this broad

8

array of conduct by setting a relatively low bar for the level of arson connection that is required to apply the cross-reference. It follows that an offense involves arson under the Guidelines where it merely "has as a part or includes" arson. *See id.* at 720. Here, arson was "a part of" the false statement offense, within the meaning of *Montgomery*, because Logsdon made her false statement to an arson investigator, and it concerned her activities on the night of the arson under investigation. The underlying arson was at the statement's conceptual core. Just as the mother plants were part of the statutory violation in *Montgomery* because they contributed to the defendant's criminal conduct, arson is part of the offense in this case because Logsdon's false statement can only be understood with reference to the ongoing arson investigation it obstructed. Without the arson, the statement would not have been made, let alone recorded, let alone prosecuted. The district court's application of the arson cross-reference was proper because arson was a critical part of Logsdon's 18 U.S.C. § 1001 offense.[3]

Reading the Guidelines together with 18 U.S.C. § 1001, we think almost every false statement uttered to an arson investigator and successfully prosecuted implicates the cross-reference. That is because the question of the cross-reference's application only arises at sentencing, once there is an underlying conviction for the

---

[3] Logsdon's offense "includes" arson—the other meaning of "involve" surveyed in *Montgomery*—for much the same reason. We have declined to hold that the word "involve" requires one thing to be literally included within another. *See Scalia v. Wynnewood Ref. Co., LLC*, 978 F.3d 1175, 1182 (10th Cir. 2020) (holding that a vessel need not "contain" a hazardous chemical to be part of a process "involving" a hazardous chemical).

false statement.  Under 18 U.S.C. § 1001, a prosecution for a false statement requires the government to prove that the defendant's falsehood was "material[]" in the context of a "matter" within the federal government's jurisdiction.  Where that "matter" is an arson investigation, such as the Mail-Mart inquiry conducted by Agent Stephens, a conviction thus requires the false statement to have been *material* to the arson investigation.  If that is the case, we think the cross-reference naturally applies to a defendant's conduct.  In other words, a false statement in an arson investigation successfully prosecuted under § 1001 will typically involve arson because the statement was necessarily material to the investigation of the arson.  Here, for example, Logsdon's false statement materially misinformed Agent Stephens by placing her in Mail-Mart on the night of the fire when she was in another city entirely.  Section 1001's materiality requirement means that arson is almost always a necessary part of a false statement in an arson investigation.

The analogy to "but for" causation from *Montgomery* is also instructive.  In that case, we counted mother plants toward the marijuana plant total because some or all of the other ninety-nine plants could not have been grown without them.  That meant the offense involved the mother plants, even if they were not the particular plants being possessed by the defendant with intent to distribute.  The same is true here, in terms of the relationship between the Mail-Mart arson and Logsdon's false statement.  Logsdon's false statement was only made because Agent Stephens was investigating the cause of the Mail-Mart fire: arson.  And Logsdon's false statement was only prosecuted under 18 U.S.C. § 1001 because it was material to a matter

10

within the ATF's jurisdiction: arson. Arson both launched the investigation in which Logsdon made the false statement and, by rendering the statement material, sustained Logsdon's subsequent prosecution for making the statement. But for the underlying arson, the statement would not have been made and the prosecution would not have occurred. For these reasons, we hold that Logsdon's false statement offense involved arson and the district court correctly applied the arson cross-reference.

We reject Logsdon's argument that the cross-reference only applies if she was involved in committing arson. Logsdon cites to *United States v. Johnson*, where, although the defendant was not convicted of arson, the Ninth Circuit concluded that there was enough evidence to sustain the district court's finding, for sentencing purposes, that he had committed arson. 782 F. App'x 568, 570–71 (9th Cir. 2019) (unpublished). Our decision today is not in tension with *Johnson*. That case simply illustrates how a district court may validly consider whether a defendant was involved in committing arson when evaluating the cross-reference's application. In other words, there is no requirement that a defendant commit arson for the cross-reference to apply. Committing arson is sufficient, but not necessary, to invoke the cross-reference. The same is true of advancing a material falsehood in an arson investigation.

Finally, we reject Logsdon's argument that the cross-reference cannot apply here because her statement did not mention arson on its face. That contention is inconsistent with the language of the Guidelines. Nothing in § 2B1.1 requires that a false statement expressly reference arson. To apply the cross-reference, a statement

11

must only "involve" arson.  Viewing Logsdon's conduct in context makes clear how arson played a substantial part in her false statement.

## IV.

For the reasons stated above, we AFFIRM the district court's application of the arson cross-reference to Logsdon's sentence.  As a result, we AFFIRM Logsdon's sentence and do not reach the second issue Logsdon presents concerning the scope of remand.