**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 13, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOHN WESLEY NILES,

     Defendant - Appellant.

No. 16-8048
(D.C. No. 2:15-CR-00187-NDF-4)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.

Defendant-Appellant John Wesley Niles appeals from the district court's order

sentencing him to twenty-four months' imprisonment. Mr. Niles pleaded guilty to

possessing methamphetamine on November 29, 2014 with intent to distribute. Based on

evidence of distribution activities between July of 2013 and November of 2014, the

district court calculated Mr. Niles's relevant conduct under § 1B1.3(a)(2) of the U.S.

Sentencing Guidelines ("Guidelines" or "U.S.S.G.") as "somewhere" between fifty-six

and sixty grams of methamphetamine, and used *that* drug quantity as the initial predicate

---

[*]     This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

for Mr. Niles's ultimate sentence.

Mr. Niles appeals, arguing that his relevant conduct for sentencing purposes should have included *only* the fourteen grams involved in his offense of conviction. More specifically, Mr. Niles argues that the district court erred: (1) by including the 4.5 grams of methamphetamine he allegedly distributed in July of 2013; (2) by finding he intended to distribute additional quantities of methamphetamine (apart from the amount that formed the basis of his conviction) that he allegedly obtained from his codefendant throughout November of 2014; and (3) by purportedly counting, as relevant conduct, personal-use quantities of methamphetamine.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **affirm** the district court's sentencing order.

## I

In the summer of 2014, agents with the Wyoming Division of Criminal Investigation ("DCI") began investigating a methamphetamine distribution conspiracy. During the course of the investigation, the agents determined—through a series of intercepted communications—that Richard Shelby Schutt, Jr. and Mr. Niles, among others, engaged in a conspiracy to acquire and distribute methamphetamine. The relevant aspects of the investigation revealed, in particular, that Mr. Schutt and Mr. Niles repeatedly met during November of 2014, and, in conjunction with those meetings, Mr. Schutt provided Mr. Niles with methamphetamine. Notably, investigators learned from a call intercepted on November 4, that Mr. Niles told Mr. Schutt "[d]on't get rid of nothing.

2

I want whatever you have." R., Vol. III, at 62 (Tr. Sen. Hr'g, dated May 3, 2016); *accord id.*, Vol. II, at 74 (Govt.'s Sen. Mem., filed May , 2016) (recounting the contents of call 164).[1] Likewise, prior to what investigators believe was a drug transaction between Messrs. Schutt and Niles on November 22, 2014, Mr. Niles sent a text message to Mr. Schutt, saying "I'm ready when you are and bring lots." *Id.*, Vol. II, at 98 (Exhibit 1) (recounting the contents of call 588).

On the last occasion—and the single transaction to which he pleaded guilty—Mr. Niles called Mr. Schutt shortly before midnight on November 28, 2014, and arranged to pick up "'double the usual.'" *Id.* at 77 (recounting the contents of call 715). Shortly after midnight on November 29, 2014, a DCI agent watched Messrs. Schutt and Niles engage in a transaction at a public rest area, and after the two men parted, a state officer stopped Mr. Niles's vehicle (at DCI's request) and found 13.92 grams of methamphetamine in his

---

[1] The record that was submitted to us does not have materials containing the actual text messages or audio recordings between Messrs. Niles and Schutt that law enforcement intercepted. Though that does not reflect optimal appellate practice by counsel, we have no cause for concern for two reasons. First, because of a stipulation by Mr. Niles, there is apparently no dispute regarding the contents of the communications. Specifically, in an exhibit appended to its sentencing response brief in the district court, the government included the contents of the relevant text messages and also embedded audio files of the relevant calls between the two men, and, after reviewing the exhibit, Mr. Niles stipulated to its accuracy, though he "reserv[ed] his right to dispute any conclusions to be drawn from his communications." R., Vol. II, at 69. Second, though the version of the government's exhibit attached to its sentencing response brief that was filed with us does not contain operational audio files, we exercised our discretion to secure and consider a copy of the exhibit housed in the district court that does contain working audio files. *See* Fed. R. App. P. 10(a) (noting that "the record on appeal" includes "the original papers and exhibits filed in the district court").

3

coat pocket.

On September 24, 2015, a federal grand jury in the District of Wyoming returned an indictment charging Mr. Niles (and others) with conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. Mr. Niles pleaded guilty to the possession charge (under the terms of a plea agreement) on February 17, 2016, and the government dismissed the conspiracy count.

Following the plea, the U.S. Probation Office prepared a Presentence Report ("PSR"),[2] which recreated "a time frame of [the] distribution activities." R., Vol. II, at 10 (PSR, prepared Mar. 17, 2016). Mr. Schutt indicated that, in July of 2013, Mr. Niles distributed a multiple-gram quantity of methamphetamine to him, including specifically a 3.5-gram amount, and, thereafter, between October of 2014 and November 29, 2014, Mr. Schutt "'consistently' provided methamphetamine to [Mr. Niles] in one-half and one ounce quantities . . . 'every day or two.'" *Id.* More specifically, the Probation Office found from the totality of the facts that, in July of 2013 Mr. Niles must have distributed "a minimum of 1 gram plus 3.5 grams" (i.e., 4.5 grams) of methamphetamine to Mr. Schutt and that Mr. Schutt "only had four ounces to distribute to" Mr. Niles in the October-to-November 2014 period. *Id.*

In sum, the PSR determined that Mr. Niles's relevant "distribution activities"

---

[2] The PSR calculated Mr. Niles's Guidelines range based upon the 2015 edition of the Guidelines. *See* R., Vol. II, at 11 ("The 2015 Guidelines Manual has been used to determine the defendant's offense level."). Mr. Niles does not question this decision on appeal and, therefore, we also reference this edition.

included:

1. 4.5 grams that Mr. Schutt allegedly obtained from Mr. Niles in July of 2013;

2. Mr. Schutt's entire four-ounce supply between October and November of 2014; and

3. the fourteen grams (rounded up from 13.92 grams) that Mr. Niles acquired from Mr. Schutt on November 29, 2014.

The PSR thus calculated the relevant drug quantity as 130.5 grams, "creat[ing] a base offense level of 24." *Id.*

Mr. Niles objected to this aspect of the PSR (and raised other objections not pressed on appeal), initially arguing that his relevant conduct should extend no further than the drug quantity involved in his offense of conviction—specifically, *only* the fourteen grams seized on November 29, 2014. In responding to Mr. Niles's objection, the U.S. Probation Office agreed that the draft PSR overestimated the distribution activities between October of 2014 and November 29, 2014, but stressed—given Mr. Schutt's statements—that Mr. Niles's proposed figure would underestimate the relevant drug quantity. The U.S. Probation Office revised downward its original calculation, and concluded that "the most conservative [estimate] would involve at least a quarter-ounce distribution (7 grams); plus a half-ounce distribution (14 grams); plus a one-ounce distribution (28 grams); and the 14 grams seized, for a minimum of 63 grams of relevant conduct methamphetamine"—a drug quantity that carried the same "base offense level of 24." *Id.* at 34 (Addendum to PSR, dated Apr. 1, 2016); *cf. id.* at 10 (concluding that

5

130.5 grams of relevant conduct would equate to "a base offense level of 24"). Given the uncertainty regarding the precise drug quantity, however, the U.S. Probation Office indicated that the district court "may need to hold a relevant conduct hearing." *Id.* at 34. And the district court did hold such a hearing.

On May 3, 2016, the court conducted a sentencing hearing. The government elected to offer the testimony of a state police officer assigned to DCI, Special Agent Bartel ("SA Bartel"), along with recordings of the intercepted exchanges between Messrs. Niles and Schutt. SA Bartel testified, based upon his experience with drug-distribution cases, on the topic of drug "fronting"—i.e., the practice of providing quantities of drugs without any up-front payment. *See* R., Vol. III, at 47–51. More specifically, SA Bartel explained that drug dealers generally front drugs on the understanding that the recipient will "sell the drugs to make the money back, come back, pay for those drugs and pick up more drugs on a front again." *Id.* at 47. SA Bartel acknowledged, however, that fronting could result in either personal use *or* distribution, and explained that fronting "a quarter or half ounce" probably indicated "redistribut[ion]," while "fronting a half a gram[] more than likely" reflected personal use (because, he explained, the average daily drug user consumes "about a gram [or two]"). *Id.* at 49, 52. Following SA Bartel's testimony, the parties advanced their competing positions concerning Mr. Niles's relevant conduct for sentencing purposes.

More specifically, the government argued that Mr. Niles's earlier transactions with Mr. Schutt (i.e., before the offense of conviction) constituted relevant conduct for

6

purposes of U.S.S.G. § 1B1.3, because the "offense of conviction . . . possession with intent to distribute . . . [comprised] part of the same course of conduct or common scheme or plan" as the previous transactions between Messrs. Niles and Schutt. *Id.* at 56. The government then estimated Mr. Niles's relevant conduct from prior transactions by extrapolating backwards from the November 29 fourteen grams, using Mr. Niles's "double the usual" language as the touchstone. The government inferred that Mr. Niles usually obtained seven-gram quantities from Mr. Schutt, and then retraced the instances in which Messrs. Niles and Schutt arranged drug transactions. The government therefore estimated the "overall scope" of Mr. Niles's conduct during that period at "about 63 grams." *Id.*

Mr. Niles argued, by contrast, that the relevant-conduct inquiry should be limited to only those drugs possessing the proper relation to the offense of conviction, though he now acknowledged that the relevant conduct was not limited to the amount seized in the offense of conviction. Specifically, he argued that the government failed to meet its burden of demonstrating that he "distributed any of the methamphetamine that he received at any time *other than* the 4.5 grams that Schutt proffered that [he] distributed to him in July of 2013" *and* "the 14 grams that [he] pled guilty to possessing with the intent to distribute." *Id.* at 58-59 (emphasis added). Mr. Niles therefore advanced the position that "the only evidence that [had] been proved by a preponderance of the evidence in terms of the relevant conduct would be the 18.5 grams." *Id.* at 61.

The district court, however, determined that Mr. Niles's argument "disregard[ed]

7

common sense and reasonable inferences." *Id.* at 62. More specifically, the district court

explained that:

> We have – we have not only *two bookends of distribution*, but we have statements in between [by] Schutt and Niles concerning conduct during the November time frame. So by bookends I mean *we have the July 2013 distribution activity and the November 28th [sic] distribution activity which – to which Mr. Niles pled guilty*. So we have distribution. And the suggestion that everything – everything else, all other conduct, was personal use conduct, again, belies common sense.
> We also have *statements*. More notably, we've got the statement on November 4th where Niles called Schutt and said, "*Don't get rid of nothing. I want whatever you have*." From my perspective, that's not likely in the course of this day-to-day or virtually day-to-day connection between the two a statement that a user would make. "I want whatever you have. Don't get rid of nothing" suggests that whatever – whatever quantity – pick a number Mr. Niles – would have taken from Schutt . . . . *On November 22nd Niles is communicating to – again to Schutt and asked that Schutt . . . bring lots*. So this is someone that seems interested in getting as much as he can get.

*Id.* at 62–63 (emphases added). Given the nature of these statements and the fact that

they occurred between two indisputably distributive events (i.e., the two "bookends"), the

district court concluded that Mr. Niles's conduct between October and November of 2014

proved "more indicative . . . of possession with intent to distribute than simply user

quantities." *Id.* at 63. The district court therefore calculated —without further

explication—the range of "the most likely relevant conduct [as] somewhere between 56

and 60 grams of methamphetamine" and "notably over the 50 grams which would place

Mr. Niles in base offense level of 24."[3] *Id.*

---

[3] Apart from stating its ultimate calculation, the district court offered no further explanation of the basis for its determination that Mr. Niles's relevant conduct

The district court sentenced Mr. Niles to twenty-four months' imprisonment (followed by a term of supervised released), and this timely appeal followed.

**II**

We review Mr. Niles's sentence for reasonableness, "giving deference to the district court under 'the familiar abuse-of-discretion standard.'" *United States v. Hamilton*, 587 F.3d 1199, 1219 (10th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)). Mr. Niles presents a procedural-reasonableness challenge to his sentence, specifically disputing the drug quantities the district court included in its relevant-conduct finding. *See, e.g.*, *United States v. Sells*, 541 F.3d 1227, 1234 (10th Cir. 2008) (explaining that a "challenge to the district court's drug-quantity determination" constitutes "a challenge to the procedural reasonableness of [the] sentence"); *see also United States v. A.B.*, 529 F.3d 1275, 1277 (10th Cir. 2008) (noting that reasonableness has both procedural and substantive components).

In determining whether the district court correctly calculated Mr. Niles's advisory Guidelines range—and, more specifically, the scope of his relevant conduct—we review the district court's legal conclusions "de novo" and its drug-quantity determinations for "clear error." *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005). Its factual

indicated that he was accountable for fifty-six to sixty grams of methamphetamine. However, both parties seem to operate on the premise that the district court's relevant-conduct calculation implicitly included (1) the 4.5 grams from July of 2013, (2) the fourteen grams from November 29, 2014, and (3) an additional quantity—37.5 to 41.5 grams—Mr. Niles allegedly acquired from Mr. Schutt earlier in November 2014. Therefore, so do we.

determinations will be reversed "*only* if the district court's finding was without factual support in the record *or* we are left with a definite and firm conviction that a mistake has been made." *Id*. (emphases added) (quoting *United States v. Ryan*, 236 F.3d 1268, 1273 (10th Cir. 2001)).

## III

Mr. Niles raises three interconnected challenges to the district court's relevant-conduct determination. *First*, Mr. Niles argues that the district court erred by including his distribution activities in July of 2013. *Second*, he argues that the district court erred by finding that he intended to distribute the additional quantities of methamphetamine that he obtained from Mr. Schutt in November of 2014 (apart from the final fourteen grams). *Third*, Mr. Niles argues that the district court erred by counting, as relevant conduct, methamphetamine he intended only for personal use. Addressing each of Mr. Niles's challenges in turn, we uphold the district court's rulings.

## A

Mr. Niles states that the district court erred in counting the July 2013 transaction as relevant conduct under U.S.S.G. § 1B1.3, because it lacks the necessary factual and temporal nexus to the offense of conviction that occurred—over one year later—on November 29, 2014. The government contends that we should decline to review this argument under the invited-error doctrine. For the reasons that follow, we agree that the invited-error doctrine precludes this objection.

The invited-error doctrine—"a species of waiver"—"precludes a party from

10

arguing against a proposition the party willingly adopted" before the district court.

*United States v. Rodebaugh*, 798 F.3d 1281, 1304 (10th Cir. 2015) (quoting *United States v. Griffin*, 294 F. App'x 393, 395 (10th Cir. 2008) (unpublished)); *see also United States v. Teague*, 443 F.3d 1310, 1315 (10th Cir. 2006) ("A defendant cannot invite a ruling and then have it set aside on appeal.") (quoting *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996)).  In other words, "[h]aving induced the court to rely on a particular erroneous proposition of law or fact, a party may not at a later sta[g]e use the error to set aside the immediate consequences of the error."  *United States v. Morrison*, 771 F.3d 687, 694 (10th Cir. 2014) (quoting *United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005)); *see also United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) ("Our prior cases make clear that waiver bars a defendant from appealing an invited error.").

In disputing the PSR's initial relevant-conduct calculation (i.e., 130.5 grams), Mr. Niles *affirmatively* argued that "*18.5 grams*" constituted the "appropriate relevant conduct" measure, because the government only had proven that Mr. Niles intended to distribute "the 14 grams [he] pled guilty to possessing with the intent to distribute, *and* the 4.5 grams S[c]hutt proffered he obtained from Niles" in July of 2013.  R., Vol. II, at 40 (Def.'s Sen. Mem., filed Apr. 18, 2016) (emphases added); *accord id.* at 39 ("[T]he only evidence that Defendant redistributed any of the drugs that he obtained from his source is his own guilty plea to possession with intent to distribute the 14 grams that were seized on November 29, 2014, and S[c]hutt's proffer statement that he obtained 4.5 grams

11

from Defendant in July of 2013."). Mr. Niles *restated* his view—including the 4.5 grams from the July 2013 transaction—that no drug "*quantity other than the 18.5 grams should be included in [his] relevant conduct.*" *Id.* at 40 (emphasis added); *cf. id.* at 56 (Def.'s Suppl. Sen. Memo., filed Apr. 19, 2016) ("the government has presented no evidence that any of the quantities [Mr. Niles] possessed, other than the 14 grams he plead [sic] guilty to and the 3.5 grams that [Schutt] proffered he obtained from [Mr. Niles], were possessed with intent to be distributed").

Mr. Niles's counsel reinforced this position during the sentencing hearing, by again arguing that the underlying record contained "absolutely no evidence that Mr. Niles distributed any of the methamphetamine that he received at any time *other than* the 4.5 grams that Schutt proffered that Niles distributed to him in July of 2013" and "the 14 grams that Mr. Niles pled guilty to possessing with intent to distribute." R., Vol. III, at 58–59 (emphasis added). In summarizing his position, Mr. Niles's counsel again emphasized that "the only evidence that [had] been proved by a preponderance of the evidence in terms of the relevant conduct would be [those] 18.5 grams." *Id.* at 61. Thus, Mr. Niles repeatedly and consistently advised the district court that the 4.5 grams he allegedly provided to Schutt in July of 2013 constituted *relevant conduct* with respect to his offense of conviction.

Indeed, in his reply briefing on appeal, Mr. Niles effectively concedes that he "invited inclusion of the 4.5 grams from July 2013 as relevant conduct," but claims that he made that "argumentative concession . . . for purposes of distinguishing the evidence

12

presented regarding that transaction" with "the [alleged] lack of evidence [proffered] with respect to all of the disputed transactions from November 1, 2014, through November 28, 2014." Aplt.'s Reply Br. at 5–6. Mr. Niles therefore contends that his invited error "cannot be construed as an invitation to rely on the July 2013 transaction as evidence of Niles' intent with respect to transactions 16 months later." *Id.* at 2; *accord id.* at 6 (repeating the same premise).

However, Mr. Niles never explained his references to the 4.5 grams in this way before the district court. Rather, he argued—repeatedly and without qualification—that "*18.5 grams*" constituted the "appropriate relevant conduct" measure. R., Vol. II, at 40 (emphasis added). In other words, he affirmatively urged the district court to include the 4.5 grams in the calculus of relevant conduct, along with the 14 grams pertaining to his offense of conviction.

Accordingly, we must conclude that Mr. Niles invited the district court to include the 4.5 grams from the July 2013 transaction in its relevant-conduct analysis; if the court committed error by doing so, Mr. Niles invited it. Therefore, Mr. Niles may not challenge this ostensible error. *See United States v. Dunbar*, 718 F.3d 1268, 1281 (10th Cir. 2013) (rejecting the defendant's challenge to the factual basis for his sentence, because defense counsel's legal argument at sentencing invited the district court's error); *Teague*, 443 F.3d at 1315–16 (rejecting the defendant's challenge to the conditions of his supervised release, where he had proposed them through counsel and personally agreed to them at his sentencing).

13

**B**

Mr. Niles next challenges the district court's determination that the quantities of methamphetamine that he obtained throughout November of 2014 constituted relevant conduct. More specifically, he contends that the evidence concerning these additional transactions—notably, the intercepted communications between Messrs. Niles and Schutt—was insufficient to demonstrate that he possessed the additional methamphetamine with distributive intent. The government bears the burden of proving the relevant-conduct drug quantities by a preponderance of the evidence. *See United States v. Fortier*, 180 F.3d 1217, 1225 (10th Cir. 1999); *United States v. Garcia*, 994 F.2d 1499, 1508 (10th Cir. 1993). And it argues that the record amply supports the district court's inclusion as relevant conduct of an additional 37.5 to 41.5 grams of methamphetamine (i.e., in addition to the 4.5 grams from July 2013 4.5 and the fourteen grams from the offense of conviction). We agree.

**1**

When a defendant receives a conviction for possession with intent to distribute, *see* 21 U.S.C. § 841(a)(1), his sentencing range—and, more specifically, his base offense level—depends on the underlying drug quantity. "When the actual drugs underlying a drug quantity determination [have] not [been] seized, the trial court *may rely upon an estimate* to establish the defendant's guideline offense level 'so long as the information relied upon has *some basis of support in the facts of the particular case and bears sufficient indicia of reliability*.'" *Dalton*, 409 F.3d at 1251 (emphases added) (quoting

14

*United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996)).  However, the "need

to estimate drug quantities" does not provide "a license to calculate drug quantities by

guesswork."  *United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (quoting

*United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993)).

For sentencing purposes under the Guidelines, the drug quantities are not only

those associated with the offense of conviction, but also those quantities within the scope

of relevant conduct.  *See* U.S.S.G. § 1B1.3(a) ("Relevant Conduct (Factors that

Determine the Guideline Range"); *id.* at § 2D1.1 (setting forth the base offense level

calculation).  As relevant here, the scope of relevant conduct is defined by U.S.S.G. §

1B1.3(a)(2).[4]  It specifies that relevant conduct includes "all acts and omissions" that

comprise "part of the same course of conduct or common scheme or plan as the offense of

conviction."  U.S.S.G. § 1B1.3(a)(2).

Two offenses qualify "as part of the *same course of conduct* if they are sufficiently

connected or related to each other as to warrant the conclusion that they are part of a

single episode, spree, or ongoing series of offenses."  U.S.S.G. § 1B1.3, cmt. n.5(B)(ii)

(emphasis added).  In applying the "same course of conduct" standard, "similarity,

_____

[4]     As a threshold for its application, U.S.S.G. § 1B1.3(a)(2) requires that the
other offenses be of a type that would require grouping with the offense of conviction
under U.S.S.G. § 3D1.2(d).  *See United States v. Taylor*, 97 F.3d 1360, 1363 (10th Cir.
1996).  In this case, the Guidelines explicitly require grouping as to certain drug-
trafficking offenses, like possession with intent to distribute.  *See* U.S.S.G. § 3D1.2(d)
(requiring grouping for offenses under U.S.S.G. § 2D1.1); *id.* at § 2D1.1 (describing the
sentencing calculation for possession with intent to distribute).

15

regularity, and temporal proximity" constitute "the significant elements to be evaluated." *Hamilton*, 587 F.3d at 1221 (quoting *United States v. Roederer*, 11 F.3d 973, 979 (10th Cir. 1994)); *see also* U.S.S.G. § 1B1.3, cmt. n.5(B)(ii) (stating the same set of factors). The standard therefore "looks to whether the defendant repeats the same type of criminal activity over time" or "engage[s] in an identifiable behavior pattern of specified criminal activity." *Hamilton*, 587 F.3d at 1221 (quoting *Roederer*, 11 F.3d at 979). "For two or more offenses to constitute part of a *common scheme or plan*," by contrast, "they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar <u>modus operandi</u>." U.S.S.G. § 1B1.3 cmt. n.5(B)(i) (first emphasis added).

## 2

Mr. Niles contends that the recorded calls and text messages indicate only that he purchased unknown quantities of methamphetamine for unknown purposes during the November 2014 period at issue—specifically, November 2–27, 2014—and, therefore, the district court clearly erred in holding him responsible for possessing with the intent to distribute an additional 37.5 to 41.5 grams. Put another way, Mr. Niles claims that the district court had no evidentiary basis for attaching specific quantities to these November drug transactions, or for finding that these transactions involved an intent to distribute, such that they properly could be deemed relevant conduct for his drug-trafficking offense of conviction (i.e., possession with intent to distribute). We reject Mr. Niles's arguments.

### a

16

At the outset, we conclude that there was sufficient evidence in the record for the district court to find that Mr. Niles purchased methamphetamine from Mr. Schutt in a "usual" amount of seven grams. Critically, prior to the final fourteen-gram transaction, Mr. Niles requested "double the usual." R., Vol. II, at 77 (recounting the contents of call 715). The natural inference from this statement is that there was a "usual" amount and it was seven grams. Moreover, the intercepted communications between Messrs. Niles and Schutt fortify the idea that there was in fact a usual amount. *See, e.g.*, *id.* at 92 (recounting the contents of call 422) (Mr. Niles requesting Mr. Schutt bring "[s]ame if you can"); *id.* at 76 (recounting the contents of call 608) (Mr. Niles asking Mr. Schutt if he could "get my usual").

Accordingly, we conclude that there was sufficient evidence from which the district court could find that Mr. Niles purchased a "usual" amount of seven grams from Mr. Schutt between November 2 and 27, 2014. Furthermore, Mr. Niles does not challenge the government's significant contention that the recorded communications reveal that "at a minimum" he and Mr. Schutt "conducted about six methamphetamine transactions [in this November period] before the final transaction." Aplee.'s Br. at 17. Six transactions of seven grams apiece would of course yield 42 grams. Therefore, if Mr. Niles engaged in these transactions with distributive intent, the record would clearly support the district court's finding that the additional relevant conduct was 37.5 to 41.5 grams.

**b**

17

Mr. Niles's principal challenge to the district court's relevant-conduct finding can be stated concisely: the court erred because the "Government presented no evidence that [Mr. Niles] intended to distribute the drugs" he obtained from Mr. Schutt from November 2–27, 2014, rather than personally using them. Aplt.'s Reply Br. at 9; *accord* Aplt.'s Opening Br. at 25–29. Specifically, Mr. Niles contends that the transactions throughout November 2014 lack a sufficient factual nexus with the offense of conviction to qualify as the "same course of conduct" or part of a "common scheme or plan" within the meaning of U.S.S.G. § 1B1.3(a)(2). We disagree.

In particular, we reject the notion that the government failed to prove, by a preponderance of the evidence, that Mr. Niles obtained methamphetamine in November of 2014 for distribution purposes. Significantly, in finding that the November 2014 purchases reflected possession with intent to distribute, as opposed to simple possession, the district court made *two* compelling factual findings. *First*, the district court observed that the November 2014 purchases occurred between two indisputably distributive events: the initial transaction in July of 2013, and the offense of conviction on November 29, 2014. *Second*, the district court stressed that, in purchasing drugs from Mr. Schutt, Mr. Niles made statements like "I want whatever you have. Don't get rid of nothing" and "bring lots." R., Vol. III, at 62.

In addition to that evidence bearing on distributive intent, the district court had before it the seemingly undisputed fact that Mr. Niles received at least some of the drugs that he purchased from Mr. Schutt on a front basis, together with SA Bartel's testimony

18

that a seller fronts quarter-ounce quantities—like the seven-gram quantities Mr. Niles purchased—more probably than not "for someone to redistribute." R., Vol. III, at 49. Mr. Niles's attempt to counter this point fails because it depends on the contention that we have previously rejected: specifically, that "there was no evidence of any specific amounts received or transferred between Schutt and Mr. Niles." Aplt.'s Opening Br. at 28. As noted, there was sufficient evidence for the district court to find that Mr. Niles received throughout November (prior to the final transaction) methamphetamine from Mr. Schutt in the usual amount of seven grams.

Taken together, the collective weight of the foregoing evidence supports a district court finding that Mr. Niles's November 2014 purchases of methamphetamine from Mr. Schutt related to distribution. *See United States v. Gallegos*, 784 F.3d 1356, 1361 (10th Cir. 2015) (explaining that a fronting arrangement strongly suggests that the recipient of the drugs will redistribute them for profit); *United States v. Small*, 423 F.3d 1164, 1184 (10th Cir. 2005) (same).

Similarly, the record supports a finding that Mr. Niles's methamphetamine transactions with Mr. Schutt in November of 2014 comprised part of the "same course of conduct" *and* "common scheme or plan" as the November 29, 2014 offense of conviction. In brief, the transactions meet the similarity, regularity, and temporal proximity prongs of the "same course of conduct" standard, because: (1) the transactions involved purchases of the same drug at the same or similar quantity, the same accomplice (Mr. Schutt), and the same geographic area as the offense of conviction, *see United States v. Caldwell*, 585

19

F.3d 1347, 1352–53 (10th Cir. 2009) (finding similarity where the conduct involved the same drug, same accomplices, and same geographic area as the charged offense); (2) the transactions occurred regularly and repeatedly—at least six times—throughout November of 2014, *see United States v. Damato*, 672 F.3d 832, 842 (10th Cir. 2012) (explaining that regularity "looks for a pattern of similar conduct"); and (3) the transactions occurred within a temporally proximate one-month period, *see Hamilton*, 587 F.3d at 1221–22.

Relatedly, the transactions met the "common scheme or plan" standard, because the transactions were substantially connected by common participants (Messrs. Schutt and Niles), a common purpose (methamphetamine distribution), and a common modus operandi (Mr. Schutt fronting methamphetamine to Mr. Niles and receiving prompt repayment). *See* U.S.S.G. § 1B1.3 cmt. n.5(B)(i) ("For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.").

Consequently, we conclude that the record supports a district court finding that Mr. Niles engaged in methamphetamine transactions with distributive intent between November 2–27, 2014 that totaled at least an additional 37.5 to 41.5 grams. Therefore, the district court's ultimate relevant-conduct finding of between fifty-six and sixty grams would appear to be free of clear error.

**C**

20

Finally, Mr. Niles argues that the district court erred by including personal-use methamphetamine quantities in its relevant-conduct calculation. Because we have no basis on this record to conclude that the district court actually incorporated personal-use quantities, we find no merit to Mr. Niles's contention of legal error.

We have not addressed whether personal-use drug quantities qualify as relevant conduct in possession-with-intent-to-distribute cases. We have, however, addressed closely related scenarios. In *United States v. Wood*, 57 F.3d 913 (10th Cir. 1995), for example, we concluded that the district court properly included personal-use marijuana as relevant conduct where the defendant had been convicted of manufacturing marijuana. *Id*. at 920. Similarly, in *United States v. Asch*, 207 F.3d 1238 (10th Cir. 2000), we followed the weight of authority from our sister circuits in determining that personal-use methamphetamine constituted relevant conduct where the offense of conviction was a drug-trafficking conspiracy. *Id.* at 1243–44. Citing decisions from our sister circuits that concluded that personal-use quantities have no relevance to possession-with-intent-to-distribute convictions, however, we declined there to "decide whether [the] result would be different if the offense of conviction [concerned] distribution or possession with intent to distribute instead of conspiracy to commit those offenses." *Id*. at 1244 n.6 (citing *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998); *United States v. Kipp*, 10 F.3d 1463, 1465–66 (9th Cir. 1993)). And we need not resolve the issue here either.

Specifically, we need not decide whether personal-use drug quantities qualify as relevant conduct in possession-with-intent-to-distribute cases because there is no reason

21

to believe that the district court here actually included personal-use quantities in its relevant-conduct calculations. The court did not say that it was including them, and it did not indicate that its relevant-conduct figure was equal to the total amount of methamphetamine that Mr. Niles received from Mr. Schutt, such that it would necessarily include any personal-use amounts.

Indeed, if we focus on what the court did, it is actually more plausible that the court excluded any personal-use quantities than included them. In this regard, it is significant that the court settled on a relevant-conduct drug-quantity figure that was lower than the one that the Probation Office recommended in the PSR. Specifically, the court found that the "most likely relevant conduct . . . [was] somewhere between 56 and 60 grams of methamphetamine," R., Vol. III, at 63, whereas the PSR initially recommended a figure of 130.5 grams and later revised it to 63 grams, *see id.*, Vol. II, at 10 (calculating "relevant conduct to a minimum . . . of 130.5 grams"); *id.* at 34 (explaining that "the most conservative calculation would involve . . . a minimum of 63 grams of relevant conduct methamphetamine").

To the extent that we can say anything here with certainty, it is that the record does not permit us to determine that the court actually included any personal-use quantities in its relevant-conduct finding. Accordingly, we have no occasion to decide whether such an inclusion would be proper. *See United States v. Guest*, 978 F.2d 577, 578–79 (10th Cir. 1992) ("So far as we can tell from the record before us, in calculating Guest's base offense level the district court did not mention cocaine kept for Guest's personal use.").

Mr. Niles cannot demonstrate that the court erred in this regard on this record.

## IV

Based on the foregoing, we **AFFIRM** the district court's sentencing order.


Entered for the Court


JEROME A. HOLMES
Circuit Judge